NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231336-U

NO. 4-23-1336

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 1, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JOVON A. DEDMOND, | ) | No. 23CF423 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, finding the circuit court did not abuse its discretion
in denying defendant pretrial release.

¶ 2     Defendant, Jovon A. Dedmond, appeals the circuit court's order denying him
pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725
ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan.
1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff.
Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52
(setting the Act's effective date as September 18, 2023).

¶ 3     On appeal, defendant argues this court should overturn the circuit court's decision
because the State failed to meet its burden of proving by clear and convincing evidence that

(1) the proof is evident or the presumption great defendant committed the offenses charged; (2) defendant poses a real and present threat to the safety of any person or the community based on the facts of the case; and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community based on the facts of the case. Defendant further argues the court erred in its determination that less restrictive conditions would not avoid the real and present threat defendant posed to the safety of any person or the community based on the facts of the case. We affirm.

¶ 4                              I. BACKGROUND

¶ 5        In April 2023, the State charged defendant by way of information with one count of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2022)), one count of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2022)), and one count of reckless discharge of a firearm (720 ILCS 5/24-1.5(a) (West 2022)). Following a hearing, the circuit court set defendant's bond at $500,000, requiring a deposit of 10%. Defendant did not post bond and remained in detention. The State subsequently filed superseding indictments alleging the same offenses.

¶ 6        On September 18, 2023, defendant filed a motion requesting reconsideration of his pretrial release conditions. Eleven days later, the State filed a verified petition to deny defendant pretrial release under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)), as amended by the Act. The State alleged defendant was charged with qualifying offenses, and defendant's pretrial release posed a real and present threat to the safety of persons or the community (720 ILCS 5/110-6.1(a)(1), (6)(A), (C) (West 2022)).

¶ 7        At the November 2, 2023, detention hearing, the State proffered the following factual basis in support of its verified petition. According to the State, on April 9, 2023, officers

of the Bloomington Police Department responded to Alton Depot Park in Bloomington, Illinois, after receiving a report of a person being shot. When officers arrived, they found the victim, Sebastian Gaston, "with a gunshot wound to his stomach," which, Gaston stated, was the result of "a drug deal gone bad." Surveillance footage from a nearby business showed Gaston and another individual "walk into the park and approach a gazebo. There was an altercation that occurred between them," and Gaston fell to the ground. The other individual, wearing red pants and a dark hoodie, fled.

¶ 8      While still on scene, officers were approached by a witness who stated he was visiting a friend at 816½ West Washington Street when a young male individual, whom the witness recognized as defendant, "ran up to the residence and began yelling to be let inside." The witness observed defendant wearing red pants and a dark hoodie, and he was in possession of a handgun. The witness then saw defendant again when defendant left the residence wearing different clothes. Officers also spoke with a resident of 816 West Washington Street who stated he had been home "when [defendant] showed up *** demanding to be let inside." He let defendant in, and defendant changed clothes. When he asked defendant "what was going on," defendant said, "[M]an, I shot him." The resident further stated he "observed [defendant] to be in possession of a black gun. He told officers he had previously seen the defendant in possession of that firearm."

¶ 9      When interviewed later at the hospital, Gaston explained he set up "a marijuana transaction" with someone he knew as "Little Folks," later identified as defendant. Gaston showed officers the text messages between the pair discussing meeting up at the park and, while Gaston "was with [defendant] at the park, [defendant] had to briefly run home." Gaston described the house defendant went to and "it was determined to be 823 West Washington

Street," an address belonging to defendant's mother. Further investigation revealed the service provider for the number connected to the other phone used to set up the drug deal was "TextNow," a mobile voice and text messaging application. The "TextNow" account records associated with that number indicated the account belonged to defendant.

¶ 10        Officers questioned defendant at the police station on April 26, 2023. Defendant was advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and he told police he was present at the park on the day of the shooting. He also "claimed that he was the one who was being robbed and the gun went off. The gun was allegedly not his." Defendant admitted the "TextNow" phone number belonged to him and that "Little Folks" was his alias.

¶ 11        During the parties' arguments to the circuit court, the State highlighted the seriousness of the offenses and the strength of its case against defendant, noting two independent witnesses identified defendant, observed him with a handgun, and "one of them heard [defendant] give a confession as to shooting the victim." Given the "extreme violence" of the offenses, the State believed defendant posed a serious danger to both the victim and the community because it "was a shooting that took place in a public park *** in a residential area," and no condition or combination of conditions could adequately mitigate that threat.

¶ 12        Defense counsel noted defendant resided "with his mother and grandmother, who provided support *** for him." At the time of the offenses, defendant had just turned 17 years old and, prior to his arrest, he "was attending school and doing well in school programs." He also held two part-time jobs and had lived in the same community his whole life. And while counsel acknowledged the charged offenses were detainable, counsel asserted there was "some dispute as to exactly what transpired that day" and urged the circuit court to grant defendant pretrial release based on his age, lack of criminal history, and agreeability to any condition of release.

¶ 13　　　　In determining whether defendant should be released from pretrial detention, the circuit court noted the offenses were detainable and it considered the nature of the offenses, as well as the parties' proffers and arguments. The court also factored in defendant's age, which it described as a "double[-]edged sword." On one hand, the court recognized the negative impact detention had on youth, "[n]ot just because of where they are emotionally and developmentally *** but because of things like school that they could be missing." On the other hand, the court explained young individuals were prone to acting impulsively, without regard for the consequences, which gave the court concern "about whether or not just being charged would make them suddenly *** think through some of the consequences more," particularly someone "accused of doing a very serious offense." Ultimately, the court found the State showed by clear and convincing evidence the proof was evident or the presumption great defendant committed the charged offenses "for purposes of this hearing." The court also found the State showed by clear and convincing evidence defendant was dangerous, "and no condition or combination of conditions could mitigate the real and present threat from that."

¶ 14　　　　The circuit court then entered a written order, finding (1) defendant was charged with detainable offenses and the proof was evident or presumption great defendant committed the offenses, (2) defendant posed a real and present threat to the safety of a person or persons in the community, (3) no condition or combination of conditions could mitigate the real and present threat, and (4) less restrictive conditions would not mitigate that threat because defendant "has access to, and would likely attempt to use, a dangerous weapon against others if released."

¶ 15　　　　After the circuit court entered its written order denying defendant pretrial release, defendant filed his notice of appeal under Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Oct. 19, 2023).

¶ 16          This appeal followed.

¶ 17                              II. ANALYSIS

¶ 18          On January 3, 2024, the Office of the State Appellate Defender, defendant's appointed counsel on appeal, filed a notice with this court indicating it was not filing a Rule 604(h) memorandum. Thus, we examine the arguments set forth in defendant's notice of appeal.

¶ 19          Defendant's notice of appeal is a completed form from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. R. 606(d) (eff. Oct. 19, 2023)), by which he requests pretrial release with conditions. The form lists several possible grounds for appellate relief and directs appellants to "check all that apply and describe in detail." Defendant checked four grounds for relief and wrote sentences on the preprinted lines to support two of his claims.

¶ 20          The first ground for relief defendant checked alleged the following: "The State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged." The second box defendant checked was next to the ground: "The State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." Defendant provided no detailed description for why these two grounds warranted relief.

¶ 21          We have held the determination of whether pretrial release should be granted or denied is reviewed under an abuse-of-discretion standard. See *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 27, 30. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *People v. Simmons*, 2019 IL

- 6 -

App (1st) 191253, ¶ 9, 143 N.E.3d 833. Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. Likewise, "we will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of witnesses." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44, 123 N.E.3d 393.

¶ 22        We recognize the split of authority among the districts regarding how to review a circuit court's decision to grant or deny a section 110-6.1 petition. A number of reviewing courts have adopted the abuse-of-discretion standard used by this court. See, *e.g.*, *Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11; *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18; *People v. Bradford*, 2023 IL App (1st) 231785, ¶ 33; *People v. Davis*, 2023 IL App (1st) 231856, ¶ 17. Others have adopted a mixed standard of review, reviewing the circuit court's ultimate decision regarding pretrial release—or the court's consideration of the statutory factors when determining dangerousness or release—for an abuse of discretion, and reviewing whether the State presented clear and convincing evidence where required pursuant to section 110-6.1(e) (725 ILCS 5/110-6.1(e) (West 2022)) under a manifest-weight-of-the-evidence standard. See, *e.g.*, *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12; *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-32. However, like the court in *Whitmore*, we find "weighing the factors implicated in setting the conditions of pretrial release has always been entrusted to the discretion of the trial judge." *Whitmore*, 2023 IL App (1st) 231807, ¶ 24. Section 110-6.1(f)(7) of the Code requires the trial judge to "make individualized determinations based on a weighing of all of the relevant factors." *Whitmore*, 2023 IL App (1st) 231807, ¶ 24 (quoting 725 ILCS 5/110-6.1(f)(7) (West 2022)). Our review is limited to determining whether the court abused its discretion.

¶ 23 Here, defendant fails to explain why the circuit court's findings regarding these first two claims of error were an abuse of discretion. "[D]efendant, as the appellant, bears the burden of persuasion as to [his] claims of error." *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44, 91 N.E.3d 950. An appellant may not satisfy his or her burden of persuasion by merely checking a box on a form notice of appeal next to boilerplate language. At a minimum, the appellant must also point to some specific facts or aspect of the case supporting the checked ground for relief. See *Inman*, 2023 IL App (4th) 230864, ¶ 13 ("[I]t is reasonable to conclude the Illinois Supreme Court, by approving the notice of appeal form, expects appellants to at least include some rudimentary facts, argument, or support for the conclusory claim they have identified by checking a box."). As we noted in *People v. Martin*, 2023 IL App (4th) 230826, ¶ 18, Rule 604(h), which governs appeals under this Act, states "[t]he Notice of Appeal shall describe the relief requested and the grounds for the relief requested, and the form notice of appeal prescribed by Rule 606(d) requires the defendant to *describe those grounds in detail*." (Emphasis added and internal quotation marks omitted.) Because defendant failed to do as much here, we cannot conclude defendant carried his burden regarding these two check-marked grounds for relief in the notice of appeal.

¶ 24 The third ground for relief checked by defendant asserts the State failed to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat defendant posed to the safety of any person or the community based on the facts of the case or defendant's willful flight. Defendant explained:

> "At the detention hearing ***, Defense counsel argued that
> given Defendant's age of 17, that pre-trial release with conditions
> would be appropriate. Defense counsel suggested that the Court

impose mandatory conditions as well as suggesting discretionary conditions *** as well as pre-trial supervision. Such conditions would have ensured that Defendant did not pose a danger to any individual or the community as a whole. Such conditions would have further ensured that Defendant did not commit any violations of the law."

¶ 25 The final ground for relief defendant checked asserted the circuit court erred in its determination that no condition of release or combination thereof would reasonably ensure his appearance at later hearings or prevent him from committing another offense. Defendant reiterated defense counsel's suggestions, as stated *supra*, and contended "[s]uch conditions would have ensured that Defendant would not be charged with a subsequent offense."

¶ 26 Before denying pretrial release, the State must prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(2), (3)(i) (West 2022). Section 110-6.1 of the Code instructs the circuit court to consider "the specific articulable facts of the case" and provides nine factors the court may consider when assessing the real and present threat allegation. See 725 ILCS 5/110-6.1(g) (West 2022). If the court determines the defendant should be denied pretrial release, the court must make written findings summarizing the reasons for denying pretrial release, including why less restrictive conditions would not avoid the danger posed by the defendant to any person or the community. 725 ILCS 5/110-6.1(h)(1) (West 2022).

¶ 27          Here, defendant has not shown how the circuit court abused its discretion in finding the State established by clear and convincing evidence that no condition of release or combination thereof could mitigate the real and present threat defendant posed to the safety of any person or the community based on the facts of this case. Nor has he shown how the court abused its discretion in finding less restrictive conditions would not avoid the threat because defendant "has access to, and would likely attempt to use, a dangerous weapon against others if released." Instead, defendant essentially asks this court to assess the situation anew and substitute our judgment for that of the circuit court—which we will not do. *Inman*, 2023 IL App (4th) 230864, ¶ 11. The record demonstrates the court considered the proffers, the arguments of counsel, and the relevant statutory factors under section 110-6.1(g) of the Code, including defendant's age and the nature of the offenses. See 725 ILCS 5/110-6.1(g)(1), (5) (West 2022). The court's written order also contained findings summarizing the reasons for its conclusion and, therefore, complied with section 110-6.1(h)(1) of the Code. See 725 ILCS 5/110-6.1(h)(1) (West 2022).

¶ 28          Moreover, the record contains ample evidence supporting the circuit court's conclusion. Defendant acknowledged being at Alton Depot Park on the day of the shooting but claimed he was the one being robbed when the gun went off. Alton Depot Park is located near a residential area and open to the public. Defendant also told police the "TextNow" phone number used to arrange the drug deal with Gaston belonged to him and that "Little Folks" was his alias. After shooting Gaston, defendant fled the scene to a nearby residence, where two separate witnesses recognized him and observed him in possession of a handgun. In fact, one of the witnesses had previously seen defendant with the same handgun, and when defendant was asked, "what was going on," he admitted, "[M]an, I shot him."

¶ 29    Overall, the record supports the circuit court's determination the State showed by clear and convincing evidence that no condition or combination of conditions could mitigate the threat defendant posed to the safety of any person or the community based on the facts of the case and less restrictive conditions would not avoid that threat because defendant "has access to, and would likely attempt to use, a dangerous weapon against others if released." Thus, the decision was not arbitrary, fanciful, or unreasonable. There was no abuse of discretion. *Inman*, 2023 IL App (4th) 230864, ¶ 10.

¶ 30                                III. CONCLUSION

¶ 31    For all these reasons, we affirm the circuit court's judgment.

¶ 32    Affirmed.