2024 IL App (1st) 232270-U

No. 1-23-2270B

Second Division
February 27, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23 CR 811 |
| JONATHAN DOMINGUEZ, | ) ) ) | Honorable Lakshmi Jha |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:    We affirm the circuit court's order denying defendant's pretrial release.

¶ 2     Defendant Jonathan Dominguez appeals from an order of the circuit court denying his

pretrial release under the standards set forth in section 110-6.1 of the Code of Criminal Procedure

of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Act 101-652 § 10-255, and Public Act 102-1104, § 70 (eff. Jan. 1, 2023).[1] For the following reasons, we affirm.

¶ 3                                      I. BACKGROUND

¶ 4      On December 24, 2022—before the effective date of the amended Code—defendant was arrested and charged with numerous offenses, including attempted first-degree murder, attempted aggravated criminal sexual assault, aggravated kidnapping, aggravated battery, and aggravated domestic battery. A bond hearing was held the next day, and defendant was ordered to remain in custody without bond.

¶ 5      On October 31, 2023—shortly after the amendments to the Code took effect—defendant filed a "Petition to Grant Pretrial Release Under New Law." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting an effective date of September 18, 2023). Defendant sought a hearing to determine his eligibility for pretrial release under the "new statutory standards" found in the amended Code, namely that a defendant is now entitled to pretrial release unless the State proves by clear and convincing evidence that he committed a detainable offense, that his release poses a real and present danger to any person or the community, and that no condition or combination of release conditions would mitigate that danger. 725 ILCS 5/110-6.1 (West 2022). The State filed its own petition for a detention hearing the following day, arguing that defendant should remain in pretrial detention.

¶ 6      The case proceeded to a detention hearing, where the State gave the following proffer. The victim and her husband, who was a friend of defendant's, began renting a room in defendant's apartment about seven months prior to defendant's arrest. On the night of December 23, 2022,

---

[1] This legislation is commonly referred to as the SAFE-T Act or the Pretrial Fairness Act, though neither name is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1.

while the victim's husband was at work, defendant and the victim drank together at a local establishment. They then returned to their apartment and continued drinking. At some point in the evening, defendant revealed to the victim that he would sometimes go into her bedroom, sniff her underwear, and use them to masturbate.

¶ 7    Around this time, the victim was intoxicated and decided to go to bed. She was awoken in the early morning hours of December 24, 2022 to find that she was naked from the waist down and that defendant was naked in bed next to her. The victim's bedroom door had been damaged as if pried open, apparently with a crowbar that police later found in the bedroom. When defendant realized that the victim was awake, he began strangling her and beating her on the face and body. Defendant also threatened to rape and kill the victim. A DNA swab from the victim's neck later showed the presence of defendant's DNA.

¶ 8    The victim was able to get up and move into the bathroom. Although the details are not entirely clear from the record, it appears that the victim called her husband from the bathroom and told him that defendant was trying to kill her. The victim left the phone line open, concealing the phone in her bra. Defendant followed the victim into the bathroom and continued threatening her, saying that he "love[d] the smell of blood" and was going to "drain [her] blood in the bath tub."

¶ 9    Defendant then took the victim back to the bedroom, where she pleaded with him for a glass of water. When defendant agreed and went to get the water, the victim put on a pair of underwear, fled the apartment building, and called 911.

¶ 10    When the police arrived, defendant first attempted to flee. As officers detained him, defendant reached out his arm and attempted to strangle the arresting officer.[2] He was eventually taken into custody.

¶ 11    Aside from its proffer on the offenses, the State also noted that defendant had a felony background. Specifically, his criminal history included 2013 convictions for unlawful possession of a credit card and possession of a stolen motor vehicle, a 2012 conviction for attempted burglary, and a 2005 conviction for burglary.

¶ 12    For its part, the defense focused on attacking the reliability of the victim's account in numerous ways, contending that her story was "full of holes." The defense also argued that defendant was not a danger to the victim or the community because he had no convictions for violent crimes, had not violated the no contact order put in place in December 2022, and had not forfeited a bond since 2006.

¶ 13    After hearing argument, the circuit court found that (1) the proof was evident and the presumption great that defendant committed the charged offenses, (2) defendant "pose[d] a real and present threat to the safety of the alleged victim in this case as well as to the Chicago police department," and (3) there are no conditions or combination of conditions that could mitigate the risk posed by defendant. Accordingly, the court denied defendant's motion for pretrial release.

¶ 14    This appeal followed.

¶ 15                                II. ANALYSIS

---

[2] According to the State's proffer, footage from a security camera showed the victim running from the apartment building in her underwear. Similarly, the State asserted that a body worn camera captured defendant's attempts to strangle one of the arresting officers. However, neither video is included in the record on appeal. Defendant did not dispute the State's characterization as to what was captured on the videos.

¶ 16    In amending the Code, the General Assembly "comprehensively overhauled many aspects of the state's criminal justice system," including pretrial detention and release. *Rowe*, 2023 IL 129248, ¶ 4. Under the amended Code, all defendants are now presumed eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). This presumption is overcome only if the State proves by clear and convincing that (1) the proof is evident or the presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person or the community, based on specific, articulable facts of the case; and (3) no condition or combination of conditions on pretrial release would be sufficient to mitigate that threat. *Id.* § 110-6.1(e)(1)-(3).

¶ 17    In this case, defendant was originally denied bail prior to the amendments to the Code and remained in pretrial detention when the amendments took effect. Although not specifically cited by either party, we note that the amended Code provides that defendants in such circumstances are entitled to a hearing under the new statutory standards in order to reconsider their release status. *Id.* § 110-7.5(b).

¶ 18                              A. Standard of Review

¶ 19    Before reaching the merits of defendant's arguments as to why he should have been granted pretrial release, however, we must first address the standard of review. Since the amended Code took effect, the proper standard of review has been the topic of much debate among the appellate districts, and even among different divisions here in the First District. Some courts have held that all aspects of detention hearings under the amended Code should be reviewed for abuse of discretion. *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18; *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10; *People v. Bradford*, 2023 IL App (1st) 231785, ¶ 33. Others have held that the circuit court's findings should be reversed only if they are against the manifest weight of the

evidence. *People v. Pitts*, 2024 IL App (1st) 232336 ¶ 29; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12. Still others have adopted a mixed approach whereby (1) the circuit court's findings on whether the defendant committed a detainable offense and whether the defendant posed a danger to the community are reviewed under the manifest weight standard, but (2) the ultimate determination on whether to grant or deny pretrial release is reviewed for abuse of discretion. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-36; *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 8; *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. One justice has endorsed a *de novo* standard, at least when the circuit court hears no live testimony and relies solely on documentary evidence. *Saucedo*, 2024 IL App (1st) 232020, ¶ 122 (Ellis, J., specially concurring). However, the case at hand does not require us to dwell on the standard of review because our conclusion would be the same regardless of the level of deference we afford to the circuit court.

¶ 20                         B. Evidence of the Offenses

¶ 21    Turning to the merits, we first note that defendant has chosen not to file an appellant's memorandum and has instead opted to stand on the points raised in his notice of appeal. See Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023) (appellant may file, but is not required to file, a memorandum on appeal). On the preprinted notice of appeal form, defendant has checked the boxes indicating that the State has failed to meet its burden of proof on each of the three requirements described above. We will address each point in turn.

¶ 22    Defendant first argues that the State failed to show that the proof was evident or the presumption great that he committed the charged offenses. For support, defendant identifies several factors that he contends render the victim's account not credible. In particular, as he did in the circuit court, defendant emphasizes that (1) the victim sustained "only minor injuries" for which she refused medical attention; (2) the victim's husband did not report hearing defendant's

threats through the open phone line; (3) the victim "admits she lied" to the 911 operator about seeing defendant with a gun; (4) a toxicology report showed that the victim had cocaine in her system, which she did not mention to police; (5) defendant's DNA was not found on the victim's privates or underwear; and (6) the victim did not allege that defendant attempted to penetrate her.

¶ 23    We note that several of defendant's points reference materials that do not appear in the record on appeal. Although the victim was examined at the hospital after the incident, the record is devoid of any medical evidence on her condition or her injuries. The same is true for any police reports documenting what the victim or her husband told the police. Thus, it is difficult for us to determine to what extent, if any, this evidence would support defendant's arguments.

¶ 24    For example, defendant asserts that the victim "admits she lied" about seeing him with a gun. Despite this characterization, nothing in the record shows that the victim claimed defendant was armed, much less that she later admitted to "lying" about it. In response to this point in the circuit court, the State clarified that the victim told the 911 operator that defendant "was threatening to kill her and she knows that he has guns." Thus, it seems reasonably likely that the victim may have said that defendant owns one or more guns, not necessarily that he used one in this case. Regardless, given the state of the record, there is simply no way of knowing what the victim actually said or why she said it. Normally, such deficiencies in the record must be resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 25    Even taking defendant's claims at face value, however, they do not lessen our confidence in the court's decision. For instance, while defendant claims that the victim's husband did not report hearing defendant threaten the victim, it would not be entirely surprising for the husband to be unable to hear everything that was said while listening through a phone hidden in the victim's bra. Moreover, the parties appear to agree that the husband did report hearing defendant say,

"[K]iss me. I want to be with you." Thus, the victim's account is at least partially corroborated by what little the record reveals of her husband's statement to police.

¶ 26    In a similar vein, it is also not particularly surprising that no DNA was found on the victim's underwear or privates given the evidence that defendant was interrupted when the victim awoke. To the extent that a lack of DNA could weigh against the victim's credibility, we note that her account was again at least partially corroborated by the presence of defendant's DNA on her neck. In any event, DNA evidence is not required to sustain any of the charges, including attempted aggravated criminal sexual assault. *People v. Rivera*, 2011 IL App (2d) 091060, ¶ 35.

¶ 27    As a final point on this issue, defendant also raises that the victim did not allege that he "attempted to penetrate her," presumably because attempted sexual penetration is an element of attempted aggravated criminal sexual assault. See 720 ILCS 5/11-1.30 (West 2022). Of course, this point is specific to that offense, and says nothing about the other detainable offenses with which defendant was charged.

¶ 28    Regardless, we find that the evidence adduced at the detention hearing was sufficient for the circuit court to conclude that the State met its burden on the charge of attempted aggravated criminal sexual assault. A defendant commits the offense of aggravated criminal sexual assault when he commits the offense of criminal sexual assault in a way that involves at least one of the aggravating factors enumerated in the statute. *Id.* Criminal sexual assault occurs when the defendant commits an act of sexual penetration through the use of force or threat of force. *Id.* § 11-1.20(a)(1). Importantly, "sexual penetration" is defined broadly and includes "any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person[.]" *Id.* § 11-0.1; *People v. Maggette*, 195 Ill. 2d 336, 347 (2001) (noting that the Criminal Code defines the term "sexual penetration" "more broadly than its common and

- 8 -

ordinary meaning"). Because defendant was charged with attempted aggravated criminal sexual assault, the State is required to prove he took a substantial step toward the sexual penetration of the victim. *People v. Decaluwe*, 405 Ill. App. 3d 256, 265-66 (2010). Whether the defendant took a substantial step toward committing sexual penetration is determined by considering the surrounding circumstances. *People v. Pizzaro*, 2020 IL App (1st) 170651, ¶ 31.

¶ 29 The evidence in this case showed that after a drunken night in which defendant professed his sexual desire for the victim, defendant then broke into the victim's bedroom, stripped her naked from the waist down, and climbed naked into bed with her. Defendant was interrupted when the victim awoke, and he threatened to rape the victim. From this evidence, it was reasonable for the circuit court to conclude that defendant took a substantial step toward an act of sexual penetration. See *Id.*, ¶ 33 (sufficient evidence for aggravated criminal sexual assault where the defendant, who admitted an intention to rape the victim, ripped off her shirt and stuck his hand down her pants before being interrupted by passersby); *People v. Hawkins*, 311 Ill. App. 3d 418, 426-27 (sufficient evidence of substantial step toward sexual penetration where the defendant removed his shoes, tried to crawl into bed with the victim, and announced a "sexual objective to 'kick it' with her").

¶ 30 In sum, the points raised by defendant on appeal were presented to the circuit court and rejected. Without expressing any opinion as to whether the State can prove the charges beyond a reasonable doubt, we find no error in the circuit court's determination at this stage. See *Bradford*, 2023 IL App (1st) 231785, ¶ 32 ("clear and convincing evidence" requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt). While defendant may of course raise the victim's credibility as an issue at trial, his arguments on appeal are insufficient to undermine the circuit court's finding.

¶ 31 C. Dangerousness

¶ 32    Next, defendant argues that the State did not prove by clear and convincing evidence that he posed a real and present threat to the safety of any person or the community. In support, defendant again submits the same points he raised in the circuit court: (1) he has no arrests or convictions for violent crimes, (2) he has not violated the no contact order instituted at his initial bond hearing, and (3) he has not violated any bond since 2006.

¶ 33    In considering whether a defendant poses a real and present danger, the circuit court may consider a variety of factors, including, but not limited to, (1) the nature and circumstances of the charged offense, including whether the offense was a crime of violence or a sexual offense; (2) the history and characteristics of the defendant, especially criminal history indicative of violent or abuse behavior;  (3) the identity of any person to whom the defendant may pose a threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding them; (5) the defendant's age and physical condition; (6) the victim's age and physical condition; (7) whether the defendant is known to possess or have access to weapons; (8) whether the defendant was on probation, parole, or other form of supervised release at the time of the alleged offense, (9) any other factors listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2002)). 725 ILCS 5/110-6.1(g)(1-9) (West 2022).

¶ 34    We recognize that some of these factors weigh in defendant's favor. Although defendant has prior felony convictions, none involve violent crimes. Defendant's last conviction was in 2013, and there is no indication that he was on any type of supervised release at the time of his arrest in this case. Defendant has also apparently not violated the no contact order with the victim, though we note that defendant has remained in pretrial detention since his arrest.

¶ 35    Even so, on balance, defendant's arguments do little to overcome the seriousness of the allegations against him and the contents of the State's proffer. The evidence at the detention

hearing showed that defendant forced his way into the victim's bedroom, stripped her naked from the waist down as she slept, and crawled naked into bed with her. When she awoke, he struck her, strangled her, and threatened to rape and kill her. He then followed her to the bathroom and continued making violent threats such as that he "love[d] the smell of blood" and was going to "drain [her] blood in the bath tub." Fortunately, the victim was able to escape and get the attention of the police. When the police arrived, defendant attempted to flee before assaulting an arresting officer. Under these circumstances, we cannot say that the circuit court erred in finding that defendant posed a real and present danger to the community.

¶ 36                                    D. Conditions on Release

¶ 37    Finally, defendant has checked the box on the preprinted notice of appeal form indicating that the State failed to prove that no condition or combination of conditions on his release would be sufficient to mitigate the threat he posed to the community. However, defendant has not elaborated any further in the space provided on the notice of appeal form. This court has previously cautioned defendants against proceeding with such conclusory claims of error. *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 34-42; see also *Inman*, 2023 IL App (4th) 2308664, ¶ 13 ("[I]t is reasonable to conclude the Illinois Supreme Court, by approving the notice of appeal form, expects appellants to at least include some rudimentary facts, argument, or support for the conclusory claim they have identified by checking a box."). For the reasons identified in our dangerousness analysis above—and especially without the benefit of any argument from defendant—we see no basis on which to conclude that the circuit court erred in determining that no condition or combination of conditions on pretrial release would be sufficient to mitigate the safety risks posed by defendant.

¶ 38                                    III. CONCLUSION

¶ 39    For the reasons stated, we affirm the judgment of the circuit court.

¶ 40    Affirmed.