2023 IL App (1st) 231785B

No. 1-23-1785B

Opinion filed December 11, 2023.

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 23111224201 |
| | ) | |
| TERRENCE BRADFORD, | ) | The Honorable |
| | ) | Anthony Calabrese, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment and opinion.

OPINION

¶ 1    Defendant Terrence Bradford appeals from the trial court's order granting the State's petition to deny him pretrial release under the legislation commonly referred to as the SAFE-T Act or the Pretrial Fairness Act (the Act). See Pub. Act 101-652 (eff. Jan. 1, 2023).[1] On appeal,

_____

[1]Neither the Illinois Compiled Statutes nor the forgoing public act refer to the "Safety, Accountability, Fairness and Equity-Today" Act, *i.e.*, SAFE-T Act, or the "Pretrial Fairness Act." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. Certain provisions of the legislation in question were amended by Pub. Act 102-1104 (eff. Jan. 1, 2023). See *Rowe*, 2023 IL 129248, ¶ 4. We also note that the supreme court initially stayed the implementation of this legislation but vacated that stay effective September 18, 2023. *Id.* ¶ 52.

defendant asserts that the State's petition was untimely and that the trial court abused its discretion by ordering denial of his release. For the following reasons, we affirm the trial court's judgment.

¶ 2                                    I. Background

¶ 3     Defendant was charged with a Class 2 robbery (720 ILCS 5/18-1(a) (West 2022)) that occurred on July 5, 2023. On September 19, 2023, he was arrested for that charge as well as charges of misdemeanor battery and obstruction of identification that had occurred that same day. He appeared before Judge Mary C. Marubio the next day to establish the conditions of his pretrial release. See 725 ILCS  5/110-2(b), 110-5, 110-10, 110-12 (West 2022). At that time, the State had not filed a petition to detain him. Following that hearing, Judge Marubio ordered defendant to be released subject to electronic monitoring and the assistant public defender waived the statutory 48-hour review of defendant's case (725 ILCS 5/110-5(e) (West 2022)), which was continued to September 26, 2023.

¶ 4     When defendant appeared in court on September 26th, Judge Anthony Calabrese inquired as to why defendant was still in custody.[2] Defendant explained that the pretrial release order could not be fulfilled because he had been unable to identify a host site address where electronic monitoring could be implemented. It appears that defendant did not, however, formally request a hearing to reopen the conditions of pretrial release. 725 ILCS 5/110-5(e) (West 2022). On the same day, the State filed a petition to detain defendant because the robbery he committed was a forcible felony and he posed "a real and present threat to the safety of any person or the community."[3] (725 ILCS 5/110-6.1 (West 2022)). Judge Calabrese would later state that while

---

[2] Our record on appeal does not contain a transcript of that proceeding. Our facts in that regard are taken from Judge Calabrese's later account, the accuracy of which has not been challenged on appeal.

[3] The assistant public defender was granted a continuance until the next day. Because the jail failed to bring defendant to court, the case was continued once more.

defendant's inability to be released with electronic monitoring would have required the court to reopen the conditions of pretrial release, the State filed its petition to detain him before that could happen.

¶ 5 A hearing on the State's petition to detain defendant occurred on September 29th. According to the State's proffer, the 11-year-old female victim was walking near the 4300 block of Leavitt at about 10:45 a.m. on July 5, 2023. Defendant, riding an electronic bicycle with trinkets hanging from the handlebars, approached her from behind. A Ring surveillance camera captured part of the encounter.

¶ 6 Defendant, who had distinctive facial hair, struck the victim in the face, knocking her to the ground, outside the camera's view. He then stole her Coach purse, which contained an iPhone and debit card. While the theft of the purse and contents was apparently not captured on camera, video footage showed defendant fleeing with the victim's purse resting on his handlebars.

¶ 7 Approximately two weeks later, a Chicago police officer observed defendant riding the same bicycle on the sidewalk and apprehended him near the 3900 block of North Ashland Avenue. At that time, defendant wore sunglasses, a shirt and a backpack that were similar to the items depicted in the aforementioned robbery video. He also rode the same unique bicycle with trinkets hanging from the handlebars. Despite being apprehended, defendant was released with a citation, as the victim had not been shown a photo array. That being said, officers were able to obtain defendant's identifying information during this encounter, which was captured on a body-worn camera. On July 24th, the victim viewed a photo array but was unable to make an identification.

¶ 8      Detectives learned on September 19th that defendant had been placed in custody following an incident at the Bow Wow Lounge on the 5100 block of North Ravenswood. Defendant had entered the premises and made a sexual comment to a customer. When an employee intervened, defendant struck her and proceeded to bite her face, although he did not break the skin. This led defendant to be arrested and charged with misdemeanor battery.

¶ 9      On the same day, Officer Stokes, who had previously interacted with defendant regarding a retail theft three years prior, watched the video of the July robbery and identified defendant as the offender. Officer Carrizales, who had spent five hours interacting with defendant on a criminal trespass to land case in September 2022, also identified defendant in the robbery video. Both officers' prior interactions with defendant were captured on body-worn cameras.

¶ 10      Based on the forgoing, the trial court found the State had established probable cause. In addition, the court noted that pretrial services had issued a public safety assessment report (PSA) scoring defendant 6 out of 6 on the "new criminal activity" scale and 5 out of 6 on the "failure to appear" scale. The PSA had also identified several risk factors. The report noted, among other things, that the current robbery was violent, that defendant had a pending charge at the time of the offense, that three of his prior convictions were violent, and that he had already been incarcerated. Defendant had also previously failed to appear in court.

¶ 11      The State informed the trial court that defendant had four prior felony convictions, including attempted aggravated robbery, robbery and two possession of a stolen motor vehicle convictions. He also had 17 prior misdemeanors, including criminal trespass to land, criminal trespass to real property, assault and retail theft, as well as 11 bond forfeitures.

¶ 12      In response, the assistant public defender argued that the State had not met its burden of showing that the proof was evident, or the presumption was great, that defendant committed the

robbery. The assistant public defender argued that while the State's petition rested on its proffer, no one aside from the police had seen the surveillance video, which apparently did not show defendant taking the victim's belongings. Counsel further argued that no proceeds of the robbery were recovered from defendant.

¶ 13   The trial court found that robbery was a detainable felony. See 725 ILCS 5/110-6.1(a)1.5 (West 2022). In addition, the State had "proven by clear and convincing evidence that the proof is evident, the presumption great, that the defendant did in fact commit the offense of robbery." Furthermore, the offense was "appalling" and defendant was a danger to the victim and the community as a whole. The court found there were no conditions of pretrial release or combinations thereof "that would mitigate the real and present threat posed by the defendant." Accordingly, the court ordered that defendant be denied release. Defendant now appeals pursuant to Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023).

¶ 14                                    II. Analysis

¶ 15                              A. Timing of Petition

¶ 16   On appeal, defendant first asserts that the State's petition to detain him under section 110-6.1(c)(1) was untimely. Defendant argues that while that statute permits the State to file a petition within 21 days of a defendant's arrest *and release*, the State filed its petition to detain him before he was actually released. According to defendant, the trial court should have instead held a hearing under section 110-5(e) because the court's order to release him was not executed within 48 hours. This issue presents a matter of statutory construction, which we review *de novo*. *People v. Lighthart*, 2023 IL 128398, ¶ 39.

¶ 17   A defendant is presumed to be entitled to pretrial release on personal recognizance, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2022). In addition, section 110-5 sets

forth several factors the trial court is to consider in determining which conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2022). Those conditions "shall be the least restrictive conditions or combination of conditions necessary to reasonably ensure the appearance of the defendant as required or the safety of any other person or persons or the community." 725 ILCS 5/110-5(c) (West 2022). When the State alleges that pretrial release should be denied because the defendant "presents a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, the burden of proof of such allegations shall be upon the State." 725 ILCS 5/110-2(e) (West 2022).

¶ 19    Here, the trial court ordered that defendant be released subject to electronic monitoring. That order could not be executed, however. The State then filed a petition to detain defendant under section 110-6.1(a).

¶ 20    That statute states, in pertinent part, that "[u]pon verified petition by the State, the court shall hold a hearing and may deny a defendant pretrial release" if certain conditions are met. 725 ILCS 5/110-6.1(a) (West 2022). Section 110-6.1(c)(1) governs the time for filing such a petition:

> "A petition may be filed without prior notice to the defendant at the first
>
> appearance before a judge, *or within the 21 calendar days*[] *** *after arrest and release*
>
> *of the defendant* upon reasonable notice to defendant; provided that while such petition is
>
> pending before the court, the defendant if previously released shall not be detained."
>
> (Emphasis added.) 725 ILCS 5/110-6.1(c) (West 2022).

¶ 21    Thus, the State has 21 days after a defendant's arrest and release to file a petition to detain a defendant. It is undisputed that the State filed its petition to detain defendant less than 21

days after defendant was arrested and *ordered* to be released. The issue here, however, is whether "release" as used in section 110-6.1(c) encompasses an order purporting to release a defendant or whether "release" requires the execution of that order, *i.e.*, the defendant's physical release. If the former, the State's petition was timely filed. If the latter, the State's petition was premature.

¶ 22    To ascertain the legislature's intent, a statute's language must be given its plain and ordinary meaning. *People v. Reyes*, 2023 IL 128461, ¶ 30. A statute is ambiguous, however, if reasonably well-informed persons could understand the statute in more than one way. *Lighthart*, 2023 IL 128398, ¶ 39. In that instance, a reviewing court may use extrinsic aids of statutory construction, such as legislative history, to determine the legislature's intent. *Reyes*, 2023 IL 128461, ¶ 31. Where a statute's language is ambiguous and legislative history is not determinative of its meaning, courts attempt to resolve the ambiguity by examining the entire statute. *Id*. Furthermore, courts presume that the legislature did not intend to achieve an absurd, unjust or inconvenient result. *People v. Taylor*, 2023 IL 128316, ¶ 45.

¶ 23    We find that on its face, section 110-6.1(c)(1) is subject to two reasonable meanings.

¶ 24    First, the State reasonably understands "release" to encompass the court's order to release a defendant. The Act contemplates that trial courts will endeavor to impose conditions that are not only ideal, but feasible (see 725 ILCS 5/110-5 (West 2022)) and a trial court must, as a general rule, be able to expect that when it orders a defendant to be released subject to conditions, that release will in fact occur. That being said, defendant reasonably understands "release" to refer to his literal, physical release from jail. Accordingly, we find the statute to be ambiguous.

¶ 25    The parties have not directed us to any legislative history shedding light on the legislature's intention with respect to the meaning of "release" in this context. Our own research has not revealed anything pertinent in this regard either. That being said, we find this case illustrates that defendant's reading of the statute would ultimately produce absurd results.

¶ 26    Following the trial court's order that defendant be released subject to electronic monitoring, defendant could not identify an appropriate host site and, thus, could not be released. Yet, defendant could have conceivably rectified that problem and been released at any time. Defendant offers no reason why the State should be required to wait for a defendant's physical release before filing a petition to prevent that very thing. Such inaction would be irresponsible at worst and neglectful at best. In addition, requiring the State to wait for a defendant's physical release before filing a petition to detain him would only delay the State's filing, limiting any potential benefit to a defendant. Accordingly, requiring the State to wait to file a petition to detain a defendant until he has already been released would be, in a word, absurd.

¶ 27    Defendant, citing section 110-5(e), nonetheless argues that the Act contemplates that the 21-day period in question will not begin until the defendant is physically released.

> "If a person remains in pretrial detention 48 hours after having been ordered
> released with pretrial conditions, the court shall hold a hearing to determine the reason
> for continued detention. If the reason for continued detention is due to the unavailability
> or the defendant's ineligibility for one or more pretrial conditions previously ordered by
> the court or directed by a pretrial services agency, the court shall reopen the conditions of
> release hearing to determine what available pretrial conditions exist that will reasonably
> ensure the appearance of a defendant as required, the safety of any other person, and the
> likelihood of compliance by the defendant with all the conditions of pretrial release. The

8

inability of the defendant to pay for a condition of release or any other ineligibility for a

condition of pretrial release shall not be used as a justification for the pretrial detention of

that defendant." 725 ILCS 5/110-5(e) (West 2022).

Defendant asserts that because he remained in pretrial detention 48 hours after the court ordered

his release, the court was required to hold a hearing under section 110-5(e), to the exclusion of a

section 110-6.1 hearing.

¶ 28    Defendant concedes that he did not argue below that section 110-5(e) foreclosed the

State's petition to detain him under section 110-6.1. He nonetheless urges us to find the trial

court committed plain error by entertaining the State's petition. Even assuming that the plain

error doctrine could conceivably apply to such a claim, we find no error, let alone plain error.

See *People v. Pacheco*, 2023 IL 127535, ¶ 61.

¶ 29    First, defendant has not explained why hearings to set pretrial release conditions and

hearings to deny pretrial release are mutually exclusive and cannot be held in tandem. In both

instances, the burden of proof is on the State. 725 ILCS 5/110-2(b) (West 2022); 725 ILCS

5/110-6.1(e) (West 2022). In addition, efficiency would be best served by proceeding on both

matters at the same time. Indeed, a successful petition to detain a defendant under section 110-

6.1(c) could render issues raised at a section 110-5(e) hearing moot. We find no reason why the

trial court should be required to first find an alternative condition to electronic monitoring only

to then find that the State has shown the defendant should not be released at all. *Cf. People v.*

*Vingara*, 2023 IL App (5th) 230698, ¶¶ 1, 3 18, 22 (finding that the trial court could not entertain

the State's petition to detain the defendant under section 110-6.1 until the court first held a

hearing under section 110-5(e) and section 110-7.5(b) where the defendant, who was arrested

prior to the Act taking effect, had been ordered to be released on the condition that he deposit security but did not do so and remained detained).

¶ 30    To the extent defendant suggests that defense counsel was deficient for failing to request a section 110-5(e) hearing, it is conceivable that the omission was deliberate. Defendant may have preferred to find a way to remedy the lack of an appropriate address for electronic monitoring rather than have the court find a less desirable alternative. See also *Vingara*, 2023 IL App (5th) 230698, ¶ 22 (stating with respect to defendants who, prior to the Act taking effect, were required to deposit monetary security, that such defendants may prefer to remain in detention until able to satisfy the monetary security rather than move for a hearing under sections 110-5(e) and 110-7.5(b)).

¶ 31                                                    B. Proof of the Offense

¶ 32    Next, defendant asserts that the trial court erroneously granted the State's petition to detain him because the State did not prove by clear and convincing evidence that the proof is evident and the presumption great that he committed this robbery.

¶ 33    When the State files a petition to deny a defendant pretrial release, the trial court may grant that petition following a hearing only where "the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and the defendant is charged with a forcible felony, which as used in this Section, means *** robbery." 725 ILCS 5/110-6.1(a) (West 2022)). In addition, "[a]ll defendants shall be presumed eligible for pretrial release[.]" 725 ILCS 5/110-6.1(e) (West 2022). Pertinent to defendant's argument on appeal, section 110-6.1(e) requires that "the State shall bear the burden of proving *by clear and convincing evidence* that *** the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a)," in this

case, robbery. (Emphasis added.) *Id*. The "clear and convincing" standard of proof requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt. *People v. Clay*, 361 Ill. App. 3d 310, 322 (2005).

¶ 34    We review the trial court's determination for an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. In doing so, we will not substitute the trial court's factual and credibility findings with our own. *Id*. An abuse of discretion occurs where the court's judgment is fanciful, arbitrary or unreasonable, or where no reasonable person would agree with the court's position. *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 35    Here, the trial court found that the State had "proven by clear and convincing evidence that the proof is evident, the presumption great, that the defendant did in fact commit the offense of robbery." Specifically, the video captured the 11-year-old victim being hit by someone who two officers later identified as defendant. According to the State's proffer, the video also showed defendant leaving the scene with the victim's purse. The court also found that while no robbery proceeds were recovered, time had passed between the robbery and defendant's arrest. The court further found that the victim would certainly know that her items were taken.

¶ 36    The trial court was not required to find that the victim's inability to identify defendant from a photo array or the absence of any admissions on defendant's part negated the strength of the State's proffer. This is particularly true given that two officers were able to identify defendant as the individual in the video. Additionally, the officers did not need to have witnessed the encounter in order to merely recognize defendant in the video. Given that the Act specifically authorizes the State to proceed by way of proffer, we also reject defendant's suggestion that the State was required to present affidavits from the officers who identified him or the surveillance video itself. See 725 ILCS 5/110-6.1(f)(2), (5) (West 2022).

¶ 37    Considering the trial court's findings in light of the record, we find the court did not abuse its discretion in finding that the State met its burden of proof.

¶ 38                                III. Conclusion

¶ 39    The State permissibly filed a petition to deny defendant pretrial release within 21 days of the trial court's order to release him. In addition, the court did not abuse its discretion by finding that the State met its burden of proving by clear and convincing evidence that the proof was evident, and the presumption great, that defendant committed robbery.

¶ 40    For the foregoing reasons, we affirm the trial court's judgment and remand this cause for further proceedings.

¶ 41    Affirmed; cause remanded.