2024 IL App (1st) 232453

No. 1-23-2453B

Opinion filed March 1, 2024

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 MC1 11486301 |
| | ) | |
| RICHARD WELLS, | ) | Honorable |
| | ) | William N. Fahy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Presiding Justice Reyes specially concurred, with opinion.
Justice Lampkin specially concurred, with opinion.

**OPINION**

¶ 1    Defendant Richard Wells appeals the trial court's order granting the State's petition to deny

him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (725 ILCS

5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known

as the Pretrial Fairness Act.[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various

---

[1]The legislation has also been referred to as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act. Neither commonly known name is official, as neither appears in the Illinois Compiled Statutes or the public act.

provisions of the Pretrial Fairness Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).

¶ 2                                    I. BACKGROUND

¶ 3      Defendant was arrested on December 4, 2023, and charged with being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2022)), aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1)), reckless discharge of a firearm (*id.* § 24-1.5(a)), and unlawful use of a weapon by a felon (*id.* § 24-1.1(a)). The charges arose from defendant allegedly firing a revolver at individuals at a gas station.

¶ 4      The following day, the State filed a petition for pretrial detention pursuant to section 110-6.1(a)(6) of the Pretrial Fairness Act (725 ILCS 5/110-6.1(a)(6) (West 2022)), alleging that the proof was evident or the presumption great that defendant committed the offense of being an AHC and that he posed a real and present threat to the community's safety.

¶ 5      The public safety assessment from the Office of Statewide Pretrial Services (OSPS) indicated that defendant had previously been convicted of a felony but did not include a "new violent criminal activity flag." In the assessment, defendant scored a 3 out of 6 in terms of "new criminal activity" and 2 out of 6 in terms of "failure to appear." Pretrial Services recommended release with pretrial monitoring.

¶ 6      At a hearing on the State's petition, the State proffered that at approximately 6:50 p.m. on December 4, 2023, defendant fired a revolver toward several unidentified individuals at a gas station in Chicago. Police officers on patrol nearby heard the gunfire. They observed defendant running from the gas station toward a vehicle while holding his right side and then they saw him place an object in the vehicle. When the officers detained defendant and other individuals in the

vehicle, they saw a revolver in the center console's cup holder. The revolver contained one expended shell casing. The officers obtained a surveillance video recording that showed defendant firing the revolver at individuals and then running away, while holding the revolver.[2]

¶ 7    The State also proffered that in 2018 defendant was convicted of three counts of residential burglary and sentenced to four years' imprisonment, after which he completed parole in that case. Defendant was also adjudicated "with an admission of guilt" for aggravated vehicular hijacking as a juvenile in 2017.

¶ 8    Defendant proffered that, according to one of his family members who was at the scene, defendant was running from the gas station because he was being shot at. The revolver that police recovered was in the trunk, not in the center console cup holder, and it was registered to defendant's family member. Defendant also proffered that the officers never saw him holding a firearm; they only saw him running with his hand at his side. Regarding the danger he presented to the community, defendant argued that (1) his last violent offense was the 2017 aggravated vehicular hijacking, (2) his 2018 residential burglary convictions did not involve violence, and (3) he completed parole in 2021 and had not been charged with any other offenses since. Defendant was 24 years old, worked full-time, and cared for his 2-year-old son. Defendant requested "[p]retrial monitoring or a reasonable condition other than detention."

¶ 9    The court granted the State's petition for pretrial detention and ruled as follows:

"The charge for which the defendant comes before the Court is armed habitual criminal. It's a Class X felony and it is detainable under the Pretrial Fairness Act.

---

[2]The State did not present this video recording at the pretrial detention hearing, and it is not part of the record on appeal.

Next, this Court must determine whether the State has proved by clear and convincing evidence that the proof is evident and the presumption is great that this defendant did, in fact, commit the detainable offense.

First, I have to look at the nature and circumstances of the offense. I am relying on the State's proffer. I am also relying on the excellent points that [defense counsel] has raised about the possible identification or—well, possession issues, I should say, and identification issues.

Relying on the State's proffer, on December 4th at about 6:50 p.m.[,] I believe it was 800 West 123rd Street, if I got that right from the proffer, law enforcement hears a gunshot and sees this defendant running from a gas station located there to a Chevy Impala, holding his right hand as if he's trying to conceal or holding something in his right hand, and they do observe him place an item inside of the vehicle; the vehicle being the Chevy Impala.

Apparently, the defendant and the vehicle [are] detained. There is video surveillance. I'm not sure where it came from, if it's from the gas station or from a nearby business or residence. Apparently, that video surveillance shows the defendant discharging a firearm at other individuals who were—are unknown at this point but apparently were at the gas station. The video surveillance then shows this defendant run towards the vehicle, holding a firearm. So, apparently, on the video surveillance the firearm is visible.

After the defendant is detained, there's a replica firearm that's seen in plain view, along with this revolver. The revolver that is recovered was loaded, but it had an expended

shell casing. We don't see too many revolvers anymore, but that expended shell casing corroborates that that was a firearm that was discharged.

So given the totality of what I've heard, including the State's proffer with regards to the defendant's criminal history, I do believe the State has met its burden by clear and convincing evidence that the proof is evident and the presumption is great that the defendant did, in fact, commit this offense.

Next, I must determine whether the defendant poses a real and present threat to the safety of others should he be released with some type of conditions that the Court may impose.

With regards to that, I have to look at the nature of this offense. I can't overlook the fact that the level of violence in this particular offense where the defendant is identified as the person who was firing a firearm at other individuals at a gas station. Clearly, the defendant was armed. Clearly, he brandished a firearm. Clearly, he used a firearm by discharging it while at the gas station and at individuals who were present at or near the gas station.

So, yes, I do believe that the defendant does pose a real and present threat to the safety of others, should he be released, based upon the nature and circumstances of this particular offense.

Next, I must determine whether the—there are any conditions or set of conditions that this Court can impose that would mitigate the real and present danger posed by the defendant, should he be released. Again, [defense counsel] makes some excellent points

with regards to this. The defendant, apparently, was discharged from IDOC in 2019; apparently, successfully completed his parole.

I have considered the mitigation that's been proffered by the defense: That the defendant is 24 years old, he is working full time, does care for his small child, and he appears to have support here in court today.

I've also taken into consideration the Pretrial score and their recommendation, a 3 and a 2, with a recommendation of Pretrial monitoring.

I also have to take into consideration the defendant's criminal history and the nature and circumstances of this particular offense. The defendant does have three prior residential burglaries that he was convicted of, and he was discharged from parole on those cases in 2021, December of 2021, so actually less than—almost exactly two years ago.

I also have to take into consideration and I can consider from 2017 the defendant was adjudicated delinquent for an aggravated vehicular hijacking, which is certainly a crime of violence, and there's a crime of violence before the Court.

So, looking at the totality of everything that I have heard, I do believe that the State has sustained its burden. I am going to grant the petition to detain."

¶ 10    The court's written order found that defendant posed a real and present threat to the safety of the community because he "was armed with a firearm and discharged the firearm in the direction of other individuals." It also found that no conditions could mitigate that threat because "[d]efendant has 3 prior felony convictions [and] 1 prior adjudication for Agg[ravated] Veh[icular] Hijacking." The written order also incorporated the "reasons stated on the record."

¶ 11    Defendant timely appealed.

¶ 12                                II. ANALYSIS

¶ 13    On appeal, defendant argues that the trial court should have granted pretrial release with electronic monitoring. Specifically, he argues that the State failed to show that pretrial release with electronic monitoring would not ensure his appearance or prevent him from committing a crime and that the trial court abused its discretion by not imposing the least restrictive conditions of release necessary to protect the community.

¶ 14    The Pretrial Fairness Act presumes that all defendants are eligible for pretrial release. *Id.* § 110-6.1(e). Relevant here, the State may file a petition for pretrial detention when "the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" and the defendant is charged with certain qualifying offenses, one of which is AHC. *Id.* § 110-6.1(a)(6)(D). The State must prove by clear and convincing "evidence" that (1) the proof is evident or the presumption great that the defendant committed a detainable offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, and (3) no condition or combination of conditions of pretrial release could mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e)(1)-(3).

¶ 15                            A. Standard of Review

¶ 16    Defendant challenges only the trial court's *ruling* of pretrial detention, not its factual findings. The parties agree that we review the trial court's pretrial detention ruling for an abuse of discretion. Several other panels in this District have taken that approach. See, *e.g.*, *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18; *People v. Bradford*, 2023 IL App (1st) 231785, ¶ 33.

An abuse of discretion occurs when the court's ruling is fanciful, arbitrary, or unreasonable or where no reasonable person would agree with the court's position. *Bradford*, 2023 IL App (1st) 231785, ¶ 33.

¶ 17    Although we agree with the parties that the abuse of discretion standard applies, Justice Lampkin's special concurrence to this opinion compels us to explain why the manifest weight of the evidence standard does *not* apply. This pretrial detention hearing, like most pretrial detention hearings, did not involve evidence in the legal sense of that term. Evidence consists of witness testimony, documents, physical exhibits, stipulations, and judicially noticed facts. Illinois Pattern Jury Instructions, Criminal, No. 1.01 (approved July 18, 2014). The parties did not present any "evidence" to the trial court. In fact, neither side presented what appears to be the most important piece of evidence in this case: the surveillance video that allegedly shows defendant discharging the revolver towards people at the gas station and then running away while holding the revolver. Rather, the State simply described that video for the court. We cannot see how an Assistant State's Attorney's oral summary of a video that is not in the record constitutes "evidence" that the trial court or this court could weigh.

¶ 18    Both parties also made uncontested proffers about the facts of this case and defendant's criminal and personal background. The PFA allows parties to present "evidence" in that manner (725 ILCS 5/110-1.6(f)(2) (West 2022)), but that does not mean that the manifest weight of the evidence standard automatically applies. The manifest weight standard applies when the trial court hears actual evidence like live witness testimony, as it would at a hearing on a motion to suppress evidence. See, *e.g.*, *People v. Valle*, 405 Ill. App. 3d 46, 57-58 (2010). By contrast, when the trial court reviews only documentary evidence, *de novo* review applies. *Addison Insurance Co. v. Fay*,

232 Ill. 2d 446, 453 (2009). Neither of those scenarios describe what happened at this pretrial detention hearing, so neither of those standards of review apply.

¶ 19    Sentencing decisions, which are posttrial detention rulings, are the best analogy for pretrial detention rulings.[3] Sentencing hearings, like pretrial detention hearings, are not subject to the Rules of Evidence (*People v. Arze*, 2016 IL App (1st) 131959, ¶ 120), and often involve materials that are not admitted as evidence, such as presentence investigation reports and statements from victims, friends, and family. It is well-established that "[a] trial court's sentence is entitled to great deference and weight and may not be disturbed absent an abuse of discretion." *People v. Nugen*, 399 Ill. App. 3d 575, 588 (2010); see also *People v. Geiger*, 2012 IL 113181, ¶ 27. Sentencing frequently involves profound deprivations of liberty that far surpass pretrial detention, up to and including life imprisonment. If we entrust trial courts to exercise discretion in fashioning sentences, then we should trust them to exercise discretion in making pretrial detention rulings, and therefore the abuse of discretion standard of review should apply.

¶ 20    The abuse of discretion standard also applies in other areas of the law when we recognize that the trial court is in a better position to evaluate an issue based on the court's personal observation of and familiarity with the case. See, *e.g.*, *Oldenstedt v. Marshall Erdman and Associates, Inc.*, 381 Ill. App. 3d 1, 11 (2008) (effect of improper closing argument). That rationale applies to pretrial detention hearings. The trial court is in a better position than we are to evaluate whether a defendant should be detained pending trial. Unlike us, the trial court can observe the defendant's demeanor and whether he or she appears compliant versus defiant or threatening.

---

[3]We acknowledge that a sentencing hearing occurs after a conviction, whereas a pretrial detention ruling occurs before a conviction.

¶ 21    We acknowledge that the law is not settled as to the standard of review that applies to pretrial detention rulings. *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 14 (collecting cases). Hence, we have engaged in this analysis despite the parties' agreement that the abuse of discretion standard applies. We agree with the parties, and we will apply the abuse of discretion standard to this appeal.

¶ 22                                B. Pretrial Detention Ruling

¶ 23    We find that the trial court's decision to detain defendant pending trial was not an abuse of discretion. Defendant does not dispute that AHC is a qualifying offense for pretrial detention, and on appeal, he does not dispute the State's proffer as to the facts of this incident. Therefore, the trial court's finding that the proof was evident or the presumption great that defendant committed AHC was not an abuse of discretion. The trial court also did not abuse its discretion by finding that defendant's pretrial release poses a threat to the community and that no conditions of release could mitigate that threat. Defendant's criminal history supported those conclusions. Defendant was adjudicated delinquent in a juvenile aggravated vehicular hijacking case in April 2017. Just eight months later, in December 2017, he was arrested for residential burglary. In June 2018, defendant was convicted of three counts of residential burglary and was sentenced to four years' imprisonment. He completed parole in December 2021. Just two years later, he was arrested in this firearm case. This timeline indicates that not even the relatively recent experience of incarceration deters defendant from allegedly committing violent crimes.

¶ 24    Defendant argues that the trial court should have granted pretrial release with electronic monitoring, as the OSPS recommended. The trial court has the authority to grant pretrial release with electronic monitoring (see 725 ILCS 5/110-10(b)(5) (West 2022)), but its decision not to do

so in this case was not so arbitrary or baseless that no reasonable person would agree with it (see *Bradford*, 2023 IL App (1st) 231785, ¶ 33). Rather, the court's pretrial detention ruling was based on defendant's criminal history within the past six years. The fact that another court might reach a different conclusion, or that the OSPS did reach a different conclusion, does not mean that the trial court's ruling was an abuse of discretion. See *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 39. Nor did the trial court abuse its discretion simply because defendant presented some mitigating evidence, such as his employment and taking care of his son. See *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55.

¶ 25    Moreover, the trial court did not "abuse[ ] its discretion by not imposing the least restrictive conditions of release necessary to protect the public," as defendant claims. The trial court appropriately concluded that *no* conditions of pretrial release would mitigate the threat defendant poses to the community. Accordingly, we find that the trial court did not abuse its discretion in granting the State's petition for pretrial detention.

¶ 26    Finally, we have set out the trial court's entire oral ruling above as an example for courts hearing pretrial detention cases to follow. The court's oral ruling is exceptionally well organized and thorough. It addresses each factor relevant to a pretrial detention decision, and it matches both parties' proffered facts to the law. The result is a clear and comprehensive appellate record of the trial court's ruling and reasoning, which we appreciate and hope that other courts will provide in the future.

¶ 27                                III. CONCLUSION

¶ 28    For the foregoing reasons, we affirm the trial court's grant of the State's petition for pretrial detention.

¶ 29    Affirmed.

¶ 30    PRESIDING JUSTICE REYES, specially concurring:

¶ 31    I concur in the judgment affirming the trial court's grant of the State's petition for pretrial detention.

¶ 32    LAMPKIN, J., specially concurring:

¶ 33    I concur in the judgment, as the outcome would be the same regardless of whether we applied an "abuse of discretion" or "manifest weight of the evidence" standard. However, I believe that manifest weight of the evidence is the appropriate standard of review for appeals stemming from the trial court's findings at a pretrial detention hearing.

¶ 34    The lead opinion asserts that the appropriate standard of review for these appeals should be whether the trial court abused its discretion. It is true that some cases have adhered to the abuse of discretion standard. See, *e.g.*, *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10; *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18; *People v. Bradford*, 2023 IL App (1st) 231785, ¶ 33.

¶ 35    But others have held that the first two elements of the State's burden should be reviewed for whether the trial court's finding was against the manifest weight of the evidence, while the third element should be reviewed for whether the trial court abused its discretion. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 35-36; *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 62-63. Still others have held that the trial court's findings should be reviewed solely for whether they were against the manifest weight of the evidence. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12; *People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 8; *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 15. And finally, some among us have advocated that we should review detention orders *de novo*. *Saucedo*, 2024 IL App (1st) 232020, ¶¶ 64-123 (Ellis, J., specially concurring).

¶ 36 This debate is not trivial or without consequence. Pretrial detention, first and foremost, has a constitutional dimension because it constitutes a deprivation of the fundamental right to liberty. *United States v. Salerno*, 481 U.S. 739, 750 (1987). Indeed, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755. Furthermore, pretrial liberty "permits the unhampered preparation of a defense and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). And lastly, it is axiomatic that pretrial detention has the potential to devastate familial relationships, employment, and educational pursuits, despite the individual being shielded by the presumption of innocence. We regard the abuse of discretion standard as the most deferential standard of review, next to no review at all, and it is typically reserved for decisions by a trial judge overseeing his or her courtroom or maintaining the progress of a trial. *People v. Holman*, 402 Ill. App. 3d 645, 650 (2010). In contrast, this court has traditionally reviewed cases in which a party bears a burden of proving something by "clear and convincing evidence," using the manifest weight standard. *In re C.N.*, 196 Ill. 2d 181, 208 (2001). Given the gravity of the liberty interest at stake and the fact that pretrial detention appeals are ones in which the State bears a burden to justify detention by clear and convincing evidence, it makes little sense to apply the most deferential standard of review we have to these appeals.

¶ 37 The lead opinion's response to this is to note that sentencing decisions, too, are left to the discretion of the trial court despite the deprivation of liberty that follows. However, sentencing hearings differ in critical ways. First, as the lead opinion acknowledges, a defendant at a sentencing hearing has been found guilty of an offense and thus stripped of the presumption of innocence. A defendant at a pretrial detention hearing retains that presumption. Furthermore, there

is no burden of proof at a sentencing hearing. Even if neither party offered evidence in aggravation or mitigation, the trial court would still be empowered and, indeed, required, to impose a sentence on the defendant. But pretrial detention hearings have a clearly defined burden of proof established by the legislature. Lastly, the question of the sentence to be imposed is not a binary one. The trial court has an array of possible sentences from which to choose, ranging from the minimum to the maximum allowable by law, and it is called upon to use its own subjective judgment to decide what is an appropriate sentence.

¶ 38 But in pretrial detention hearings, the trial court does not have this same freedom to exercise its subjective judgment. Whether the State has supplied the requisite proof is a binary question; either the State has met its burden of proof or it has not. Standards of proof are concerned with the quantum and quality of proof that must be presented in order to prevail on an issue. *In re D.T.*, 212 Ill. 2d 347, 355 (2004). The standard of proof instructs " ' "the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." ' " *Id.* (*quoting Addington v. Texas*, 441 U.S. 418, 423 (1979), quoting *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring)). The sound discretion of the trial court "is simply not a standard of proof—traditional, nontraditional, or otherwise," and says nothing about the degree of confidence a trial court must have in the correctness of its conclusions. *Id.* This logic holds even when the trial court is required to consider or balance numerous statutory factors. *Id.*

¶ 39 If we were to apply an abuse of discretion standard, that would logically necessitate that the detention determination is one left to the trial court's discretion. But that is plainly inconsistent with the Code's language. If the State fails to carry its burden at a pretrial detention hearing, the

Code does not empower the trial court to use its discretion to nevertheless detain the individual. 725 ILCS 5/110-6.1(e) (West 2022). In that instance, the Code's presumption of eligibility for release remains intact, and the defendant must be released, with or without conditions. *Id.*

¶ 40    Applying the abuse of discretion standard makes even less sense when accounting for the apparent origin of that standard in pretrial detention appeals. The lead opinion relies on *Whitmore*, 2023 IL App (1st) 231807, ¶ 18, and *Bradford*, 2023 IL App (1st) 231785, ¶ 33, for support. Both cases cited *Inman*, 2023 IL App (4th) 230864, ¶ 10. *Inman* appears to be the first opinion following the effective date of what is commonly known as the Pretrial Fairness Act (Pub. Act 101-652 (eff. Jan. 1, 2023)) that addressed this question. *Inman*, in turn, relied solely on *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, to hold that abuse of discretion review is appropriate.

¶ 41    However, even though *Simmons* was reviewing the complete denial of bail, it did so using the portion of the Code of Criminal Procedure of 1963 (Code) in effect at the time that governed the setting of bail and other conditions of release. *Simmons*, 2019 IL App (1st) 191253, ¶¶ 1, 12; 725 ILCS 5/110-5 (West 2018). Thus, *Simmons* did not even interpret the prior version of the statute now at issue in this case. In fact, there is virtually no precedent dealing with the prior version of the detention statute. It appears there is one published decision, *People v. Gil*, 2019 IL App (1st) 192419, which addressed the prior version of the detention statute. But *Gil* was concerned with whether the proper procedures were followed before the trial court denied bail and had no occasion to contemplate the standard of review for the issue facing us today. *Id.* ¶ 15.

¶ 42    The prior version of section 110-5 of the Code had no burden of proof regarding the setting of bail or conditions of release. 725 ILCS 5/110-5 (West 2018). And the two cases upon which *Simmons* relied both also concerned the setting of bail rather than detention. See *People v.*

*Saunders*, 122 Ill. App. 3d 922, 929 (1984) (the court's decision to increase bond from $200,000 back to the original $500,000 had "no hint of the arbitrariness or caprice which signals judicial abuse of discretion"); *People v. Edwards*, 105 Ill. App. 3d 822, 830 (1982) (the court's decision to require the defendant to post bond on appeal was not an abuse of discretion). Thus, it made sense for *Simmons* to apply an abuse-of-discretion standard. *Simmons*, 2019 IL App (1st) 191253, ¶¶ 9, 12-13. Ultimately, *Inman*'s claim that we have "historically" reviewed bail appeals for an abuse of discretion (*Inman*, 2023 IL App (4th) 230864, ¶ 10), at least when it comes to the complete denial of bail, is unsupported. Continuing to cite cases that relied on *Inman* does nothing but pile up more precedent upon already unstable ground.

¶ 43 Finally, the lead opinion's emphasis on the fact that pretrial detention hearings typically do not involve live testimony and that the Rules of Evidence do not apply is misplaced. It is true that most pretrial detention hearings will involve nothing more than proffers, which do not involve testimony or any meaningful adversarial testing. But the lead opinion has it backwards. If the trial court is not called upon to weigh credibility or perform fact-finding, that is an argument for *less* deference to the trial court, not more. In fact, the lead opinion's point echoes a nearly identical argument offered in favor of *de novo* review, yet it arrives at a standard of review on the exact opposite end of the spectrum from *de novo* review. See *Saucedo*, 2024 IL App (1st) 232020, ¶¶ 98-100 (Ellis, J., specially concurring). If a cold record of a proffer affords a reviewing court the same exact information that the trial court had, there is little reason to defer so completely to the trial court.

¶ 44 Accordingly, in my view, defendant's appeal should be reviewed on the basis of whether the trial court's finding was against the manifest weight of the evidence. "A finding is against the

manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Nevertheless, I concur in the judgment itself.

*People v. Wells*, 2024 IL App (1st) 232453

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-MC1-11486301; the Hon. William N. Fahy, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Catherine S. Hareas, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Shannon M. Berkey, Assistant State's Attorney, of counsel), for the People. |