2024 IL App (1st) 240432-U

No. 1-24-0432B

Order filed April 29, 2024.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2024 MC 1100356 |
| | ) | |
| JABARI O'CONNOR, | ) | The Honorable |
| | ) | Barbara Dawkins, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

ORDER

¶ 1    *Held*: The trial court did not abuse its discretion in denying defendant pretrial release, given the facts proffered establishing his threat to the victim and community.

¶ 2    Defendant Jabari O'Connor appeals from the trial court's order denying him pretrial release under the Pretrial Fairness Act (Act) (see Pub. Act 101-652 (eff. Jan. 1, 2023)), which amended the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/100-1 *et seq.* (West

2022)).[1] He contends that, given his background and circumstances, the trial court erred in concluding he had to remain in jail pending trial, as other less restrictive pretrial release conditions were available. He also maintains the court failed to consider the specific facts of his case and the State failed to meet its burden of proof. We affirm.

¶ 3                                    BACKGROUND

¶ 4      Briefly stated, defendant, age 19, was arrested on February 12, 2024, and subsequently charged with aggravated robbery (see 720 ILCS 5/18-1(b)(1) (West 2022)), stemming from an incident wherein defendant pointed an alleged gun at the head of the victim, whom he met through an internet application, and subsequently stole his money. The State filed a petition for pretrial detention. A timely pretrial detention hearing followed, and the record shows the State proffered the following evidence as to the forcible felony.

¶ 5      On December 31, 2023, the victim and defendant corresponded through the "OfferUp" app, and the victim agreed to buy defendant's Playstation 5 in exchange for $400. At 4 p.m. the next day, on January 1, 2024, defendant, along with a cooffender, and the victim met in person at 1029 East 132nd Street, in Chicago, for the purposes of closing their business deal. Defendant told the victim to open the trunk of his vehicle and placed the Playstation box inside. The victim then turned towards the trunk to inspect the box. While he was doing so, defendant placed a "cold metal object," which the victim believed to be a gun, against the victim's head. Defendant announced, "this is a robbery" and ordered the victim to hand over his money. The victim

---

[1] We note that the Illinois Compiled Statutes and the forgoing public act do not refer to the "Safety, Accountability, Fairness and Equity-Today" Act, *i.e.*, SAFE-T Act, or the "Pretrial Fairness Act." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1. Instead, certain provisions of the legislation in question were amended by Public Act 102-1104 (eff. Jan. 1, 2023). See *Rowe*, 2023 IL 129248, ¶ 4. Additionally, the supreme court initially stayed the implementation of this legislation but later vacated the stay effective September 18, 2023. *Id.* ¶ 52.

complied. Defendant took the $400 and the Playstation 5 from the trunk. Defendant and the cooffender fled on foot, and the victim reported the crime to police.

¶ 6     A subsequent police investigation of the OfferUp app and the username and phone number associated with it led detectives to defendant. The victim confirmed that defendant was the person who was messaging over the OfferUp app by that name. Detectives also determined defendant's address of 1037 East 132nd was near the parking lot where the aggravated robbery took place. The victim further positively identified defendant from a photo array. Defendant was placed into custody on February 12, 2024.

¶ 7     The State argued the proof was evident and the presumption great that defendant committed the aggravated robbery given the advanced plan to meet with the victim near defendant's residence, defendant's use of an apparent firearm to rob the victim of property and money, and the victim's subsequent identification of defendant. The State argued that defendant presented a threat given that the crime was committed over the internet, and this could be done again even while on electronic monitoring. The State asked that defendant be detained.

¶ 8     Defense counsel asserted that there was no evidence, such as video or pod camera footage, confirming the complaining witness's statements. The witness did not report the offender's eye color, calling into question the identification, nor did the witness see a firearm. Counsel asserted there was insufficient evidence as to the photo array and it could have been suggestive. Counsel argued defendant did not pose a real and present threat to the safety of any person or the community based on the specific facts of this case given defendant's lack of a criminal background and his assessed threat/no-show level (a 2 for criminal activity, a 1 for failure to appear in court, and a total monitoring level of 3). In mitigation, counsel noted defendant was young, at age 19, a lifelong Cook County resident (having lived with his mother at

the stated address for 14 years), a full-time senior student at Chatham Academy, a basketball player, and a volunteer with an after-school church program. Counsel argued that any incarceration "would be very disruptive" and potentially delay defendant's graduation. Given that evidence, counsel requested the least restrictive conditions, such as electronic monitoring or GPS.

¶ 9     Following evidence and argument, the trial court found the State had shown by clear and convincing evidence that the proof was evident and the presumption great that defendant committed the offense as charged and defendant posed a real and present threat to the safety of the victim and the community. The court rejected the defense argument that there was any error in identification and noted aggravated robbery only required the victim's belief that there was a firearm given defendant's actions, not the use of an actual firearm.  See 720 ILCS 5/18-1(b)(1) (West 2022). The court noted that defendant had no criminal background and had a monitoring level of 3, in addition to the other mitigating factors identified by defense counsel.[2] Nonetheless, the court found the specific articulable facts of the case demonstrated the crime was "violent in nature," making defendant a threat to the complaining witness and community. The court stated, "sometimes, even though you have no criminal background, you still have committed an act that would have made you a danger to the community, and I find that to be the case in this instance." The court reasoned that this was not "an individual who was *** known to the defendant," but "someone who[m] the defendant is alleged to have decided to rob through this transaction." In short, it was a crime of opportunity.

¶ 10    Last, the court found that no condition or combination of conditions could mitigate the threat defendant posed to the safety of the victim or the community and that no less restrictive

---

[2]The court stated it would not consider defendant's juvenile arrest because it did not result in a conviction.

conditions would avoid that threat. Again, notwithstanding the factors in favor of defendant, including the "significant" mitigation, the court noted the facts of the case showed defendant pointed a "cold metal object" at the victim's head when announcing the robbery. The court concluded that pretrial supervision was inadequate, as defendant would not be monitored, nor was home confinement, as the court would not be timely notified of any violation. Per the court, electronic monitoring was inappropriate because it would not protect the victim or community given that it presented a defendant two days by statute to handle personal effects and was subject to tampering and escape. See 730 ILCS 5/5-8A-4(A), (A-1) (West 2022). GPS, the court noted, was only an alternative when there was no threat to the community at large. The court stated, however, it had found defendant a threat to the larger community based on his crime of opportunity via the OfferUp app. The court then granted the State's petition, ruling that defendant would remain detained until further order of the court. Its findings were generally reflected in the written order. This appeal followed.

¶ 11                                    ANALYSIS

¶ 12    On appeal, defendant does not challenge the court's finding that the proof was evident and the presumption great that defendant committed aggravated robbery as charged and that, consequently, defendant posed a real and present threat to the safety of the victim and the community. See 725 ILCS 5/110-6.1(e)(1), (2) (West Supp. 2023). Rather, defendant contends the court's determination that he be detained in county jail pending trial, over a lesser form of confinement, was in error.

¶ 13    Defendant thus challenges the third element of eligibility for pretrial release, that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the

community, based on the specific articulable facts of the case," or willful flight. 725 ILCS 5/110-6.1(e)(3) (West Supp. 2023). We note that all defendants are presumed eligible for pretrial release, and the State maintains the burden of proving by clear and convincing evidence each of the three requirements precluding release, set forth above. 725 ILCS 5/110-2, 110-6.1(e) (West Supp. 2023). Moreover, at these hearings, "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention. Risk assessment tools may not be used as the sole basis to deny pretrial release." 725 ILCS 5/110-6.1(f)(7) (West Supp. 2023). We review the trial court's detention decision for an abuse of discretion. See *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11; *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (reviewing the trial court's pretrial release determination for an abuse of discretion); *but see People v. Pitts*, 2024 IL App (1st) 232336, ¶ 29 (applying a manifest weight standard); *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 44-45 (applying a two-tiered approach).

¶ 14    For the reasons to follow, we cannot say the court's determination that defendant must remain in county jail pending trial was arbitrary, fanciful, or unreasonable, or that no person could agree with the court's determination. See *Simmons*, 2019 IL App (1st) 191253, ¶ 9 (reciting standard for abuse of discretion). The trial court identified lesser forms of detention but found them to be inappropriate given the nature of the crime defendant committed. The court noted the aggravated robbery was premeditated, directed at both the public and at the specific victim through the OfferUp app, and violent in nature, as defendant held a gun to the victim's head while demanding the property he had promised the victim and the victim's money. The court thus implicitly if not expressly found there was a level of deceit involved in committing

this violent crime. The court added that this was a random victim and not someone defendant knew.

¶ 15    The court concluded it could not be confident that defendant would not commit the crime again while on home confinement and electronic monitoring. See 730 ILCS 5/5-8A-4(A), (A-1), (E)(1) (West 2022) (noting, a two-day per week period of movement mandated for those on pretrial home confinement and electronic monitoring, along with access to a telephone).[3] The court also ruled that GPS was inappropriate given that this was a crime against the public, and defendant has not contradicted that conclusion in his brief. All this was notwithstanding defendant's significant mitigating evidence, including his lack of a criminal background, status in school and as a longtime Cook County resident, and his church volunteer activity.

¶ 16    Consistent with the Act, the court thus weighed the nature and circumstances of the specific offense charged, together with the weight of the evidence strongly supporting that defendant in fact committed the aggravated robbery, defendant's history and characteristics, and the nature and seriousness of the threat to the safety of the witness and community if defendant were released. See 725 ILCS 5/110-5, 110-6.1 (West Supp. 2023); *People v. Andino-Acosta*,

---

[3]Defendant essentially contends the trial court was prohibited from concluding that electronic monitoring is "prone to tampering." In support, defendant now cites a secondary source stating that a majority of offenders on electronic monitoring follow the restrictions and the re-arrest rate for violent crimes committed by such individuals is low. We reject defendant's argument out of hand. First, defendant did not object to the court's finding below or present this evidence, thus forfeiting the matter. See *People v. Mudd*, 2022 IL 126830, ¶ 21; *People v. Mehlberg*, 249 Ill. App. 3d 499, 531 (1993) (declining to take judicial notice of critical evidentiary material not presented to the trial court). Second, trial courts, like juries, may "consider all the evidence in the light of [their] own observations and experience in life." See Illinois Pattern Jury Instructions, Criminal, No. 1.01 (2024). One need only perform a cursory review of the news headlines to conclude that electronic monitoring is indeed subject to tampering. And, even taking defendant's secondary source as true, the court in this case clearly believed defendant would tamper with his electronic monitoring, and that supports his jail detention pending trial. "Unlike us, the trial court can observe the defendant's demeanor and whether he or she appears compliant versus defiant or threatening." *People v. Wells*, 2024 IL App (1st) 232453, ¶ 24. Moreover, as the State notes, the trial court's decision to deny pretrial release rested on a number of factors, which the court balanced against the facts of the case.

2024 IL App (2d) 230463, ¶ 19 (considering the trial court's written findings in conjunction with its oral findings).[4] The court clearly found the serious nature of the offense, and that it involved premeditation, violence, and deceit, outweighed any mitigating evidence and warranted detention. See 725 ILCS 5/110-6.1(f)(7) (West Supp. 2023) (noting, decisions regarding detention must be individualized and no single factor may be used exclusively to order detention); *People v. Cox*, 377 Ill. App. 3d 690, 709 (2007) (noting, the seriousness of the crime is the most important factor in fashioning a sentence); *cf. People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 (the bare allegations that defendant committed a violent offense are insufficient to justify pretrial detention). The court thus determined defendant was unlikely to comply with a lesser form of detention. See 725 ILCS 5/110-5(a) (West Supp. 2023). That another court might reach a different conclusion, or that the Office of Statewide Pretrial Services did reach a different conclusion, does not mean that the trial court's ruling was an abuse of discretion. *Wells*, 2024 IL App (1st) 232453, ¶ 24.

¶ 17     We therefore reject defendant's argument on appeal that the trial court failed to make an individualized decision based on the specific facts of this case. That claim is belied by the record. Notably, the court stated, "There's nothing short of pretrial detention that can mitigate the threat that you pose to any person or persons or the community, that being the complainant, and the community, based upon the specific articulable facts of the case." The court then went on to

---

[4]"We note that when determining whether a determination that no less restrictive means will mitigate the real and present threat to a person or the community, this court has examined that decision in light of the same factors in section 110-6.1 that the trial court uses to make the initial determination that the defendant poses a real and present threat." *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 49.

delineate the facts, noted above, making defendant a threat and the reasons lesser confinement did not suit him.[5] See *Andino-Acosta*, 2024 IL App (2d) 230463, ¶¶ 22, 27.

¶ 18    We likewise reject defendant's argument that the State failed to meet its burden of proof by clear and convincing evidence. The State presented the detailed facts of the offense and argued that defendant presented a threat as a result. The State argued that both electronic monitoring and GPS were inappropriate. The State reasoned that defendant could still utilize the OfferUp app while on electronic monitoring, given the mandated two days' movement, and commit crimes over the internet. Implicit in the State's argument is that defendant committed a crime involving deceit and therefore could not be trusted on home confinement or electronic monitoring. The court adopted this reasoning. Contrary to defendant's contention otherwise, this argument addressed the specific facts of this case.

¶ 19                                        CONCLUSION

¶ 20    For the foregoing reasons, we affirm the trial court's judgment.

¶ 21    Affirmed.

---

[5]Defendant also appears to argue that he's eligible for pretrial release because there was "no condition or combination of conditions [that could] *** can mitigate the defendant's willful flight" in the prosecution of his offense. See 725 ILCS 5/110-6.1(e)(3) (West Supp. 2023). This is an alternative consideration under the statute. The first consideration is whether the defendant is a threat to the victim or community, which the court found to be the case here. As such, the court did not need to consider defendant's likelihood of flight.