2024 IL App (1st) 241181B-U

SECOND DIVISION
December 2, 2024

No. 1-24-1181B

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 MC 1103345 |
| | ) | |
| CALVIN WILLIAMS, | ) | Honorable |
| | ) | Lindsay Huge, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County denying defendant's motion for relief from judgment denying pretrial release is affirmed; the State met its burden to prove by clear and convincing evidence (1) that the proof is evident or the presumption is great that defendant committed a qualifying offense and (2) that no condition or combination of conditions will mitigate defendant's threat to the safety of a person or the community; defendant was not denied a fair hearing; and the error in admonishing defendant as to his appeal rights did not prejudice defendant.[1]

---

[1]    Notice of Appeal was filed on June 3, 2024 with a disposition due date of November 12, 2024. The record was filed on June 10, 2024; a Notice in Lieu of 604(h) Memorandum was filed on September 6, 2024; and Appellee's Memorandum was filed on November 1, 2024. Pursuant to Rule 604(h), for good cause shown, the decision due date is extended to December 2, 2024.

¶ 2    The State filed a Petition for Pretrial Detention of defendant, Calvin Williams. Following a hearing, the circuit court of Cook County granted the State's petition. Defendant filed a Motion for Relief Under the Pretrial Fairness Act. Following a hearing on defendant's motion, the trial court denied defendant's motion and ordered defendant to be detained. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4    On May 8, 2024, the State charged defendant, Calvin Williams, by felony complaint with aggravated battery causing great bodily harm to Danielle Weimerskirch; aggravated battery in a public place to Danielle Weimerskirch; and aggravated battery to a protected employee in that defendant caused great bodily harm to Danielle Weimerskirch "while she was in employment as a local government worker." The offenses occurred inside a branch of the Chicago Public Library. Also on May 8, 2024, the State charged defendant by felony complaint with the aggravated battery in a public place of Charles Moffett; aggravated battery to a victim over 60 years old in that defendant struck Charles Moffett about the head with a grey metal object knowing the victim to be a person 60 years of age or over; and attempt (first degree murder) in that defendant, without legal justification and with the intent to kill or do great bodily harm to Charles Moffett, repeatedly struck the victim in the head with a metal object causing "deep lacerations, [a] broken jaw, and [a] fractured skull." The State charged defendant with aggravated battery in a public place and aggravated battery to a protected employee in that defendant, without lawful justification, caused great bodily harm to Earnestine Carter while she was in employment as a local government worker. The State also charged defendant with two counts of misdemeanor resisting or obstructing a peace officer.

¶ 5    On May 8, 2024, the State filed a Petition for Pretrial Detention Hearing. The petition

alleged that defendant is charged with a detainable offense and at a hearing the State would show by clear and convincing evidence that defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" in that defendant "repeatedly hit Victim 1, a 77 year old library patron, in the head and body causing deep lacerations, a broken jaw and a fractured skull. Defendant repeatedly hit Victim 2, a clerk at the library in the head and body causing a skull fracture, a broken hand, and a broken jaw." The petition also alleged that no condition or combination of conditions set forth in section 110-10(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-10(b) (West 2022)) can mitigate that risk.

¶ 6        Defendant was unable to appear in person at the pretrial detention hearing on May 8, 2024 due to physical illness. The trial court continued the hearing to May 13. The State provided a proffer for the purpose of determining whether defendant would be released or detained until the continued date. The State's proffer on May 8 did not refer to the victims by name but as Victim 1, Victim 2, and Victim 3. After the State's proffer the trial court found that the State's proffer satisfied probable cause and *Gerstein*[2] and ordered defendant detained until the petition for pretrial detention could be heard.

¶ 7        At defendant's pretrial detention hearing on May 13, the State made the following proffer, identifying the victims by name: On May 6, 2024, at approximately noon, Victim Carter was working as the branch manager and Victim Weimerskirch was working on that date and time as an employee in the Chicago Public Library located in the 3400 block of South Dr. Martin

---

[2]        " '*Gerstein*' refers to *Gerstein v. Pugh*, 420 U.S. 103, 112, 125 (1975), in which the United States Supreme Court held that a defendant arrested without a warrant and charged by information must be promptly presented before a neutral magistrate for a determination as to whether probable cause for arrest exists." *People v. Russell*, 2024 IL App (1st) 240535-U n3.

Luther King Drive in Chicago. Victim Moffett was 77 years old and was a patron of the library. At that time, defendant was in the library bathroom. Library staff must "buzz" library patrons into the bathroom. Another worker on the same property (but not an employee of the library) knocked on the bathroom door and, receiving no response, Victim Weimerskirch "buzzed" the worker into the bathroom. When the worker opened the bathroom door defendant yelled at him. The worker closed the bathroom door and left. Defendant then opened the door and became irate with Victim Weimerskirch.

¶ 8      Victim Carter and a witness, Boyd, approached defendant and attempted to calm him. Defendant did not calm down and Victim Carter told defendant to leave the premises, but defendant refused. Victim Carter instructed library employees to call the police. In response defendant came around the library desk and struck Victim Weimerskirch with a closed fist. Victim Carter and Boyd confronted defendant to try to get defendant to leave. Defendant asked to retrieve his property but was again told to leave. Victim Weimerskirch did call police and in response defendant lunged at her but was blocked by Victim Carter and Boyd. Defendant then struck Victim Carter in the face with a closed fist, "chipping her teeth and causing an abrasion on the side of Victim Carter's face."

¶ 9      Victim Moffett (the 77 year-old library patron) attempted to intervene between defendant and Victim Carter. Defendant pushed Victim Moffett down causing Victim Moffett to hit his head on a cabinet as he was going down. Defendant then picked up a bookend from a book cart and repeatedly struck Victim Moffett with the bookend causing "a fractured jaw, laceration in the victim's head, and a deep laceration in [the] victim's hands, that exposed *** bone and ligaments." At the same time Victim Weimerskirch was continuing to call the police. Seeing this, defendant returned to the library desk and struck Victim Weimerskirch in the head with a

bookend, "fracturing her skull." Defendant tried to hit Victim Weimerskirch again, but Boyd hit defendant with a monitor. Defendant then fled the scene.

¶ 10    Officers arrived at the scene and received a description of defendant. As the police were driving down the street, defendant stepped into the street and impeded their progress causing police to swerve their vehicle. Defendant fled and tried to climb a fence, cutting his hand, and police took defendant into custody.

¶ 11    According to the State, Victim Carter identified defendant in a show-up. Boyd and Victim Weimerskirch identified defendant in a photo array. Another witness, Knive, told officers about a backpack left in the bathroom. The backpack contained a library card registered to defendant in his name and some photographs. Boyd and Victim Carter told police they were familiar with defendant from previous encounters with him at the library. (The State did not inform the court of the nature of those encounters.)

¶ 12    The State argued that no conditions can mitigate the risks in 725 ILCS 5/110-10(b) "as this defendant has repeated crimes of violence in his background, despite the defendant serving IDOC time on them." The State argued that it did not believe that electronic monitoring would be appropriate "because it would allow defendant two days of movement and [electronic monitoring] is not designed for violent offenses." The State informed the trial court that defendant has "a new criminal activity scale of four, a failure to appear scale of two." The State identified the charges against defendant and stated that defendant "also has prior violent convictions in his background, aggravated battery to a child under 13, causing great bodily harm, from 2021, where [defendant] was sentenced to four years in IDOC, as well as a robbery from 2016, when defendant was sentenced to three years in IDOC." The State further informed the court that defendant had previous convictions for obstructing justice in 2023 for which he was

sentenced to one year in IDOC, burglary in 2018 for which defendant was sentenced to three years in IDOC, another burglary from 2018 for which he was sentenced to three years imprisonment, and a robbery from 2016 with a sentence of three years. The State informed the court that defendant "also has two bond forfeitures, failures to appear in court. As well as, he's adjudicated delinquent for disorderly conduct from 2011."

¶ 13    The State argued that it feared defendant would return to the same library where there were patrons of different ages, including children and people with disabilities, and that defendant "could potentially harm more individuals, including the victims" in this case. The State did not believe that defendant qualified for electronic monitoring and noted that pretrial services recommended "maximum conditions" should defendant be released. The State asked that defendant be detained. The State then claimed:

> "Judge, just for the record, the State did tender the Petition For Pretrial Detention Hearing, as well as the Original Case Incident Report, arrest report, defendant's criminal background, which included LEADS, IClear and CPD criminal history report, Illinois Department of Correction face sheet, Pretrial Services Assessment, felony and misdemeanor complaints, as well as the summaries of victims and witness statements created as part of the felony review, as well as the post-*Miranda* statements created by the defendant."

¶ 14     The State proffered that defendant made a post-*Miranda* statement, when asked by police why he was at the library, in that:

> "defendant stated that events that occurred in the library were a battery; and *** battery is a misdemeanor, *** the defendant further related that, when officers asked the defendant again why he was talking about the battery, he said that he fit

the description of a person that was given over dispatch."

¶ 15    The State again asked that defendant be detained.

¶ 16    Defendant's attorney acknowledged receipt of the discovery the State tendered. The defense asked the trial court to deny the State's petition for detention. The defense argued it did not believe the State proved by clear and convincing evidence that defendant committed the offenses charged. The defense asserted that defendant was using a single-stall washroom when someone else was buzzed in and stood before defendant. The defense alleged defendant "was very afraid." One of the complaining witnesses grabbed defendant by his clothes when there were three people present and defendant "was just one person." The defense noted the lack of weapons and claimed defendant "did not do anything. He was just coming to the library." The defense also stated it believed "there may be a self-defense defense in this case." The library is a public place and defendant was there checking his emails. "He was not causing any harm." The defense noted the lack of evidence that defendant was not allowed in the library and claimed that defendant "was in a very vulnerable position when he was encountered by these other people."

¶ 17    Additionally, the defense argued, the State failed to prove by clear and convincing evidence that there are no conditions that would mitigate any risk defendant poses to the people involved or to the community. The defense also noted defendant's pretrial services scores and that defendant's criminal activity score "was not the highest." The defense claimed it did not "know what they mean by maximum conditions under pretrial services." The defense informed the trial court as follows:

> "My client is 26-years old. He has been living in Chicago for the last 10
> years. He was born here and then raised in Detroit and came back. He lives with
> his uncle, but he is trying to find housing. He's been looking at a shelter to find

housing.

In addition, Your Honor, he did attend school through the Eleventh Grade, but is now going to school online to get his high school diploma. In addition to that, he was working temporary service, Work Now, on 47th Street. He was working there at a candy factory through that agency; and was also doing some landscaping for his uncle, and *** represents that he did have an interview for Chipotle. He does say that he will be able to ask his uncle to be able to stay with him."

¶ 18    The defense addressed the argument that defendant could return to the library by noting that "there are no other cases that say that there was anything that has happened at this library prior to this day" and defendant was encountered at a time "that he felt that he was supposed to be having privacy." The defense asked that defendant not be detained and that he be given "level three" pretrial services that would require defendant to meet with a pretrial services officer every week.

¶ 19    The State responded by conceding that defendant was working on a computer checking emails but then defendant "became irate and walked to the victim, struck her in the face; and then he was asked to leave." Defendant refused to leave and used a metal object to hit two individuals. One of those individuals was hit in the head, "which required a surgery on his skull, and additional surgeries for his jaw." Victim Weimerskirch was also struck in the head, "fracturing her skull." The State argued these were serious injuries and that defendant "used a metal object that could have killed the victims" by hitting them in the head repeatedly. The State did not believe that electronic monitoring or pretrial services, level three, were appropriate for defendant. The State repeated defendant's criminal history and again asked the trial court to

detain defendant.

¶ 20     The defense was allowed to respond and stated that the trial court could order defendant not to have contact with any of the complaining witnesses or the library. The defense noted that defendant has not been found guilty and pointed out that the State did not proffer any parole violations; "So it doesn't appear that, even if your Honor were to place my client on conditions, that he would violate those conditions. There's no active warrants for my client." The defense stated it believed defendant could abide by the orders the court would impose and again asked for pretrial services level three, and that the State's petition be denied. Finally, the State asserted it would "strongly argue against the defendant being placed on EM or pretrial services. Because even EM cannot prevent this defendant from going back to the location where these victims are employed."

¶ 21     The trial court stated it generally agreed with the State's request. The court noted the injuries involved were serious and occurred in a place that "have to be sanctuaries." The court opined there should be an enhancement to the offense based on its location in a public library. The court stated its personal experience in visiting libraries and its belief that "you do get a sense of safety, in what are, otherwise, challenging neighborhoods. And this individual, by allegation, is of little to no consideration for two different individuals." The court concluded: "For the court's responsibility to address the safety of the community, I cannot allow this person to be on pretrial services monitoring, curfew or sheriff's electronic monitoring. So State's petition for detention is granted and [defendant] shall be detained." The court then notified defendant that "you have a right to appeal my order. I believe within two weeks, you have to file a written Notice of Appeal of my decision, and you have a right to do that." Defendant asked if the court could help him with that. Defendant's attorney informed him that she would talk to him. The trial

court set a date for a return on indictment and the proceedings ended.

¶ 22    On May 13, 2024, following the hearing, the trial court entered an Order After Pretrial Detention Hearing. The order finds that the State showed by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant has committed an eligible offense listed in 725 ILCS 5/110-6.1(a)(1) through 110-6.1(a)(7), that being attempt murder by a violent attack on two victims in a public library; (2) defendant poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case in that defendant attacked and seriously injured two individuals in a library; and (3) no condition or combination of conditions set forth in 725 ILCS 5/110-10(b) can mitigate the real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case and less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, in that defendant can move in public while on home monitoring. The court also found that no conditions or combination of conditions set forth in 725 ILCS 5/110-10(b) can mitigate or prevent defendant's willful flight from prosecution because defendant has prior felony convictions and bond forfeiture warrants. The court ordered that defendant shall be detained and remanded defendant to the custody of the Cook County Sheriff pending trial.

¶ 23    On May 23, 2024, defendant filed a motion for relief under the Pretrial Fairness Act asking the trial court to review its May 13, 2024 decision. Defendant argued that his pretrial release should not have been denied for several reasons. First, defendant argued that the State failed to meet its burden to prove by clear and convincing evidence that the proof is evident or the presumption is great that defendant committed the offenses charged. In support of that argument, defendant attacked the charging instrument alleging there is no clear identification of

who is "Victim 1" and who is "Victim 2," and there are inconsistencies in the injuries that the State proffered. Defendant also argued that the State proffered medical conclusions without the proper evidence or records. Defendant argued there was no corroborative evidence of any injuries sustained by any complainant. Finally, defendant argued that the complainants were able to interact with law enforcement, sign complaints, make videotaped statements and view photo arrays on the same date and within hours of allegedly suffering serious injuries in the form of skull fractures.

¶ 24    Second, defendant's motion for relief argued that the State failed to meet its burden to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. In support of that argument, defendant argued that the State erred in its proffer that electronic monitoring is not designed for violent offenses. Defendant noted that electronic monitoring, GPS monitoring, or home confinement can only be imposed if no less restrictive combination of conditions would reasonably protect an identifiable person or persons from imminent threat of serious bodily harm. Defendant also argued that the State tendered no evidence that defendant would not comply with court-imposed conditions of pretrial release.

¶ 25    Next, defendant argued that he was denied an opportunity for a fair hearing. Defendant noted that the State is required to tender a copy of defendant's criminal history, any written or recorded statements, and the substance of any oral statements relied upon by the State, and any police reports in the prosecutor's possession at the time of the hearing. Defendant asserts he was provided no videotaped statements, no evidence he was given *Miranda* warnings prior to making any statements (and that evidence that proof of the charged crime may have been the result of

improper interrogation is relevant in assessing the weight of the evidence against defendant), and he was provided no statements by witness Knive. Defendant also argued that the State erred in its proffer that defendant was convicted of an aggravated battery to a child under 13 causing great bodily harm (because the offense did not include great bodily harm).

¶ 26  Finally, defendant's motion for relief under the Pretrial Fairness Act argued that the trial court erred in its admonishments regarding his right to appeal.

¶ 27  On May 30, 2024, the trial court held a hearing on defendant's motion for relief under the Pretrial Fairness Act. At the May 30 hearing defendant's attorney argued that the trial court had admonished defendant that defendant had a right to appeal the May 13 order by filing a notice of appeal within two weeks, but that on April 15, 2024 the law changed. Defendant's attorney noted that pursuant to amended Illinois Supreme Court Rule 604(h), a defendant is required to file a motion for pretrial relief as a prerequisite to filing an appeal. (Ill. Sup. Ct. R. 604(h) (eff. Apr. 15, 2024)). The trial court is required to admonish defendant of the requirement to file a motion for pretrial relief, that the detention decision would be reviewed at each subsequent appearance whether defendant filed a motion or not (Ill. Sup. Ct. R. 605(d)(1)), and that after a decision on a motion for relief defendant has a right to appeal any time before conviction (Ill. Sup. Ct. R. 605(d)(2)).

¶ 28  Defendant's attorney also argued that the State failed to produce any evidence, such as videos or photographs, to corroborate its proffer at the detention hearing that the victims received extensive injuries. Further, the State proffered that defendant was convicted "of an aggravated battery causing great bodily harm" but in fact defendant was convicted of causing "bodily harm, not great bodily harm." Moreover, the harm in that case was "a cut on [the] lip and bruising on [the] chin." Next, defendant's attorney argued that Pretrial Services assessed defendant on May

8, 2024, and recommended "maximum conditions" which defendant's attorney learned meant "Pretrial Services level 3 with curfew and a band." Defendant's attorney requested that condition for defendant and offered that defendant "could be given a 24-hour curfew, meaning that he would not leave the premises where he resides," "he could be equipped with a GPS band that would exclude him from the *** library," there would be an automatic notification if defendant ever was in the vicinity of the library, and, finally, the "conditions of release could include that [defendant] stay away from where [the victims] work, or their schools." Defendant's attorney asked the trial court to grant defendant's motion for relief.

¶ 29    The State responded that it is only required to tender evidence in its possession, that the evidence does not include any videos or photos, and the victims' injuries were corroborated by multiple police reports and interviews—and the State similarly responded to the argument that the State proffered medical conclusions without proper evidence. The State also argued that medical records were not required at that time. The State argued the bodily harm was to a child under 13 years old and admitted that it stated "great bodily harm" *once* "out of three times on the record, and it was later corrected and the State's Attorney said bodily harm." Regardless, the State argued, the trial court "did not use that in [its] ruling in deciding to detain" defendant. The State argued that the "maximum conditions" the defense requested are "not the maximum conditions [the court] can impose." Furthermore, a GPS band can be tampered with and removed giving defendant the opportunity to leave home and return to the library where the incident occurred. The State responded to the argument in defendant's motion that there was no clear identification "as to who the individuals were between the victims" by pointing out that the victims were named in the proffer by first or last name and the victims are named "in the complaints in the reports." Moreover, there were no inconsistencies in the State's proffer of the

victims' injuries.

¶ 30    The State argued that it was "not entirely true" that the victims all participated in statements and photo arrays and the signing of complaints on the same date as the incident. Instead, one victim signed one complaint on the same day as the incident but "any other complaints were either signed the following day or a day after;" and the interviews occurred two days after the incident. The State argued that there was evidence that defendant could not comply with court-imposed conditions in the form of defendant's background. Specifically, that defendant has spent multiple years in custody, was just paroled in April 2024, and defendant "has not been able to comply with the conditions of that." The State claimed the trial court "gave [defendant] his right to appeal" and argued the court properly held defendant in custody. The State asked the order to stand.

¶ 31    The trial court identified two issues raised by defendant's motion. The first was the court's admonishments and the second was the sufficiency of the evidence proffered to detain defendant. The court agreed it did not properly admonish defendant. The court questioned defense counsel what relief the defense sought for the improper admonishments. Defendant's attorney requested "another detention review." The court acknowledged "that my admonishment of [defendant's] right to appeal was improper and inadequate on May 13th" and stated, "let's let that stay where it is." The court then went on to address defendant's challenge to the ruling of detention. The court addressed defendant's argument that the State failed to produce clear and convincing evidence "that the proof of the offense was evident and the presumption great that the offense occurred." The court stated that it reconsidered the issue in light of defendant's arguments, written motion, and the State's response. The court ruled that its order of detention on May 13 would stand. The court stated it had heard nor seen anything to change its order of

14

detention and the court did not think that "any pretrial service supervision is sufficient in this case." The court ruled that it renewed the order of detention based on defendant's motion for relief and denied defendant's motion. The court again acknowledged that it "inadequately notified [defendant] of his right to appeal but stated "that matter can be taken up to appeal." The court stated it would "at this time try to adequately inform [defendant] of his right to appeal because [the court] just ordered detention again." The court then admonished defendant as to his right to appeal, including that to appeal defendant had to file a motion for relief, "as your attorney had done." The court informed defendant that it denied the motion for relief and defendant had a right to appeal the court's detention order after the decision on the motion, and "you first have to—should file a motion for relief." The court also admonished defendant that "on every court date, you do have a right to have your detention reviewed."

¶ 32     Defendant interrupted, saying "Could you put in an appeal for me?" The trial court responded, "You do have a right to file a motion for relief *** and also revisit the order of detention or your conditions of pretrial release at each subsequent court appearance. You have a right to appeal any time before your conviction" after the ruling on the motion for relief. The court admonished defendant that defendant had the right to appeal the court's order of detention after the hearing on the motion for relief, "but first you must file a motion for relief of your detention." The court also admonished defendant of the right to appointed counsel to pursue appeal. Defendant's attorney informed the court that it believed defendant could have only one appeal and that defendant did want to appeal the trial court's ruling denying the motion for relief. The court agreed there was an issue for appeal of the trial court's original admonishments on May 13 but stated the court's understanding that it had to inform defendant of his right to appeal the court's current order of detention on May 30 after denying the motion for relief.

¶ 33    On May 30, 2024, the trial court entered a written order denying defendant's Motion for Relief under the Pretrial Fairness Act.

¶ 34    On May 31, 2024, defendant filed a Notice of Appeal from Pretrial Detention or Release Order Pursuant to Illinois Supreme Court Rule 604(h). The Notice of Appeal states the date of the order on the motion for relief is May 30, 2024.

¶ 35    This appeal followed.

¶ 36                                    ANALYSIS

¶ 37    This is an appeal from an order denying a motion for relief under the Pretrial Fairness Act (Act)  pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)) and Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). There is currently a disagreement within our court about the appropriate standard of review in cases concerning the Act. Some courts and justices have applied an abuse of discretion standard to all matters concerning pretrial release and pretrial detention. *People v. Walton*, 2024 IL App (4th) 240541, ¶ 33 ("We review a circuit court's detention order under an abuse of discretion standard.") (citing *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 35), *People v. Schulz*, 2024 IL App (1st) 240422, ¶ 37 (Van Tine, J., specially concurring) ("in my view, only the abuse of discretion standard of review applies."), *People v. Wells*, 2024 IL App (1st) 232453, ¶ 16 ("we review the trial court's pretrial detention ruling for an abuse of discretion"), *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. Other courts have applied the manifest weight of the evidence standard. *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 29 ("we believe the appropriate standard of review for whether the State provided clear and convincing evidence as to the three elements necessary to justify pretrial detention is whether the trial court's finding was against the manifest weight of the evidence."), *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12 ("We will not reverse a finding that there was clear and

convincing evidence unless the trial court's finding was against the manifest weight of the evidence."). One justice has endorsed a *de novo* standard of review when the court hears no live testimony and relies solely on the documentary evidence. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 122 (Ellis, J., specially concurring). Still others have followed a twofold approach. *Saucedo*, 2024 IL App (1st) 232020, ¶ 31 ("Review of the decision to grant or deny a detention petition under section 110-6.1 of the Code requires a mixed standard of review."), *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13 ("Our standard of review is twofold."), *People v. Romero*, 2024 IL App (1st) 232023-U, ¶ 34 ("We find the twofold approach is well-reasoned."). For the following reasons, we follow the "twofold" approach to the review of orders under the Act. Nonetheless, we also find that under any of the aforementioned standards, the result in this case would be the same.

¶ 38    The decision to grant or deny a detention petition under section 110-6.1 of the Code involves three propositions. The first two determinations, whether the proof is evident or the presumption is great that the defendant committed a detainable offense and whether the defendant poses a threat to a person or the community, are questions of fact that require a certain quantum of evidence: clear and convincing (725 ILCS 5/110-6.1(e)(1), 110-6.1(e)(2) (West 2022)), which requires the trial court to determine facts. For example, do the facts admissible for purposes of the Code make it evident, or raise the presumption, that the defendant committed the offense; or does the defendant pose a threat to the safety of the community. On review, this court will examine the record to determine whether it contains facts to support those determinations by clear and convincing evidence or not.

¶ 39    The final proposition the trial court must determine, however, involves a trial judge's reasoning and opinion. The trial court must exercise a degree of discretion to determine whether

any less restrictive means will mitigate the threat a defendant poses to a person or the community. 725 ILCS 5/110-6.1(e)(3) (West 2022). "Courts are 'endowed with considerable discretion' where, as here, they are called upon to weigh and balance a multitude of factors and arrive at a decision that promotes not only 'principles of fundamental fairness' but 'sensible and effective judicial administration.' " *People v. Reed*, 2023 IL App (1st) 231834, ¶ 30 (citing 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022)).

¶ 40    We find that the factual questions a trial court must resolve in determining whether to detain or release a defendant pending trial will not be disturbed unless they are against the manifest weight of the evidence. *Saucedo*, 2024 Il App (1st) 232020, ¶¶ 31-36. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12. We further find that the trial court's ultimate conclusion about whether a defendant should be detained or released and any conditions appurtenant thereto will be reviewed for an abuse of discretion. *Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-36. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable, or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *People v. Reed*, 2023 IL App (1st) 231834, ¶ 30. The same standards apply on appeal from a denial of a motion for relief under the Act. *People v. Hill*, 2024 IL App (2d) 240346-U, ¶¶ 18-22 (applying mixed standard of review on appeal of denial of motion for relief from judgment under the Act).

¶ 41    The State may file a petition pursuant to section 110-6.1(a)(1.5) of the Code (725 ILCS 5/110-6.1(a)(1.5) (West 2022)), and the circuit court shall conduct a hearing, to deny a defendant pretrial release, only if "the defendant's pretrial release poses a real and present threat to the

safety of any person or persons of the community, based on the specific articulable facts of the case, and the defendant is charged with a forcible felony, which as used in the Section means *** aggravated battery resulting in great bodily harm *** [or] any other felony which involves the *** infliction of great bodily harm." 725 ILCS 5/110-6.1(a)(1.5) (West 2022)).

¶ 42    To secure the denial of a defendant's pretrial release, the State has the burden to prove, by clear and convincing evidence, the following relevant propositions:

> "(1) the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a), and

> (2) *** the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, *** and

> (3) no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e) (West 2022).

¶ 43    A defendant has the right to appeal an order denying pretrial release. 725 ILCS 5/110-6.1(j) (West 2022), Ill. S. Ct. R. 604(h)(1)(iii). "As a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2). A defendant may but is not required to file a memorandum identifying which issues from the motion for relief are being advanced on appeal. Ill. S. Ct. R. 604(h)(7). "Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed." *Id*. "Whether made in the motion for relief alone or as supplemented by the memorandum, the form of the appellant's

arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities." *Id*.

¶ 44    On September 6, 2024, defendant filed a Notice in Lieu of Rule 604(b) Memorandum informing this court that "counsel has concluded the Motion for Relief and the oral arguments below adequately communicate the defendant-appellant's contentions of error" and that defendant "elects to stand on the arguments below and will not file a Rule 604(h) memorandum."

¶ 45    Thus, turning to defendant's motion for relief, initially we note the absence of "citations of the record and any relevant authorities" in defendant's motion. Therefore, the motion on its face does not comply with Rule 604(h)(2). Under the prior version of Rule 604(h), a defendant denied pretrial release had to file a notice of appeal within 14 days of the entry of the order from which review was being sought. The notice of appeal was required to "describe the relief requested and the grounds for the relief requested. Ill. S. Ct. R. 604(h) (eff. Dec. 7, 2023 to Apr. 14, 2024). Under the prior version of the Rule this court warned "an appellant must present sufficient grounds on which this court can review any claims of error." *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 37.

"This would appear to mean some form of argument is required, along
with justification for claiming entitlement to relief—like references to the record,
the evidence presented, or, if possible, legal authority.

***

[E]ven under the unique circumstances created by the Act, we cannot be
expected to formulate an argument for defendant out of whole cloth, and we
decline to do so. There is a well-established principle: A reviewing court is

entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research." (Internal quotation marks omitted.) *Id.* ¶ 38 (quoting *Inman*, 2023 IL App (4th) 230864, ¶¶ 12-13).

This court also noted that in *People v. Duckworth*, 2024 IL App (5th) 230911, in dismissing an appeal based on the insufficiency of the arguments in the notice of appeal, the court stated that "by filing a notice in lieu of a Rule 604(h) memorandum, the defendant's 'counsel on appeal declined [the] opportunity to provide the missing argument, citation of the record, or authority that would support any argument that could have been made for the issues raised on appeal.' [Citation.]" *Id.* (quoting *Duckworth*, 2024 IL App (5th) 230911, ¶ 7).

¶ 46    Under the current version of the Rule, a defendant's motion for relief must state "the grounds for *** relief." Ill. S. Ct. R. 604(h) (eff. Apr. 15, 2024). The requirement to provide a cogent argument is explicit under the current version of the Rule, which now expressly requires that "the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record." Ill. S. Ct. Rule 604(h)(7) (eff. Apr. 15, 2024). Moreover, "any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h) (eff. Apr. 15, 2024).

¶ 47    In *Whitaker*, although we found the arguments presented by the defendant lacking, we declined to dismiss the appeal. *Whitaker*, 2024 IL App (1st) 232009, ¶ 42. "Nonetheless, we caution[ed] the parties that an appellant risks dismissal where the notice of appeal provides only conclusory claims of error, and the appellant chooses not to avail itself of the opportunity

provided to it by Rule 604(h)" to file a memorandum. *Id*. We decline to dismiss defendant's appeal in this case but repeat the admonition: despite the inapplicability of Rule 341 in these cases, an appeal resting on a motion for relief that does not contain citations to the record or relevant authority is subject to dismissal. See *id*. ¶ 41 (citing *Duckworth*, 2024 IL App (5th) 230911, ¶ 7 (dismissing appeal relying on notice of appeal that consisted of only checked boxes while noting that the defendant made only conclusory claims of error, referred to no evidence in the record upon which to evaluate his claims, and provided no legal argument or authority in support of his claims)).

¶ 48    Defendant's motion first challenges the sufficiency of the State's proffer to establish, by clear and convincing evidence, that the proof is evident or the presumption is great that defendant committed the offenses charged. Defendant complains of vagueness as to the identities of the victims and the injuries inflicted, the absence of medical or corroborative evidence, and questions the seriousness of the injuries in light of the victims' ability to cooperate with police. Defendant argues that as the result of alleged defects in the evidence proffered by the State the evidence was not sufficient.

¶ 49    "Clear and convincing evidence is that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.) *People v. White*, 2024 IL App (1st) 232245, ¶ 19. "The standard requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." (Internal quotation marks omitted.) *Whitaker*, 2024 IL App (1st) 232009, ¶ 49. "The Act explains that the 'State or defendant may present *evidence* at the hearing by way of proffer based upon reliable information.' 725 ILCS 5/110-6.1(f)(2) (West 2022) (Emphasis added)." (Emphasis in original.) *Id*. ¶ 54. The legislature has permitted acceptable evidence to

include proffers based on reliable information. *Id*. ¶ 55. The evidence may include hearsay from complaining witnesses, police officers, or other witnesses. *Id*. ¶ 57. Such evidence is sufficient to meet the State's burden of proof. *Id*. (citing *Saucedo*, 2024 IL App (1st) 232020, ¶ 40).

¶ 50    In *Saucedo*, this court rejected the defendant's argument that the State failed to meet its burden of proof regarding the commission of the offense because the "State could not present any evidence other than the statements of the complaining witness." *Saucedo*, 2024 IL App (1st) 232020, ¶ 38. We held that the legislature intended that witness statements "would be sufficient proof that it was evident or the presumption great that the defendant committed the charged offense." *Id*. ¶ 40.

> "Where, as here, the appellate court is called upon to decide whether the State 'failed in its burden,' of proving a factual matter by clear and convicting evidence, such a determination contemplates a question of proof, and this court must review the weight of the evidence presented. On review, this court examines the record to determine whether it contains facts to support those determinations by clear and convincing evidence." *Whitaker*, 2024 IL App (1st) 232009, ¶ 60.

We will reverse the trial court only if the trial court's determination that the proof is evident or the presumption great that defendant committed the offenses charged is " 'unreasonable, arbitrary, *** not based on the evidence presented,' or that 'the opposite conclusion is clearly evident.' " *Id*. ¶ 71.

¶ 51    First, defendant argues that as the result of an alleged ambiguity in the State's petition as to the identity of the victims, the evidence was not sufficient to meet the State's burden regarding the commission of the offense. We acknowledge the Petition for Pretrial Detention Hearing did not identify the victims by name. However, defendant fails to argue how the failure to name the

victims in the petition prevented the State from establishing, by clear and convincing evidence, that the proof is evident or the presumption is great that defendant committed the offenses charged or how defendant was prejudiced. Looking to the State's May 13 proffer and the evidence tendered to defendant, we find that the record clearly identifies which victim suffered which injuries resulting in which charges against defendant. We have reviewed both the police report and felony complaints in this case and, as partially set forth above, we find that both clearly identify the victims by name, the injuries they sustained, and the charge against the defendant. Although for the sake of brevity herein the injuries and defendant's actions leading to those injuries are not detailed as to *every* charge, that information is contained in the charging instruments as to each charged offense listed above. The State proffered that it tendered the documents to defendant (*supra*, ¶ 13); and defendant does not challenge the State's proffer in that regard. We find that defendant was not prejudiced by the lack of victims' names in the petition.

¶ 52    Next, defendant complains of the absence of medical evidence, corroborative evidence of any injuries sustained by the victims, and videotaped statements. "Prior to the hearing, the State shall tender to the defendant copies of the defendant's criminal history available, any written or recorded statements, and the substance of any oral statements made by any person, if relied upon by the State in its petition, and any police reports in the prosecutor's possession at the time of the hearing" (720 ILCS 5/110-6.1(f)(1) (West 2024)), and the State is permitted to present evidence at the hearing by way of proffer (720 ILCS 5/110-6/1(f)(2) (West 2024)). This court has construed these provisions to mean the State may proceed and can satisfy its burden of proof based on the information it is required to tender: statements, police reports, and written or recorded statements, *if any*. *Saucedo*, 2024 IL App (1st) 232020, ¶ 40 ("It would be very

anomalous to make such specific provisions for witness statements and then find that such statements were insufficient evidence of the defendant's likely commission of the offense charged."). Further, although section 110-6.1(f)(1) requires the State to tender "any" recorded statements it has, the Act does not require any form of proof other than the State's proffer "based upon *reliable information*" ((emphasis added) 720 ILCS 5/110-6.1(f)(2) (West 2024)). The Act provides that "no single *** standard may be used exclusively to order detention." 720 ILCS 5/110-6.1(f)(6) (West 2024).

¶ 53    We agree with the State's argument below that neither medical evidence nor further corroborative evidence is required at this stage of proceedings. We also note the State's argument on appeal that defendant never objected to the State's sources of information for its proffer in the trial court. We find that the reliability of the information provided by the victims is not diminished by their ability to "interact with law enforcement, sign complaints, *** and view photo arrays" despite their injuries. Moreover, the State proffered that the victims' interactions with police occurred long enough after receiving the injuries, but still close enough in time, that it is not unreasonable to conclude that the witnesses were able to provide reliable information.

¶ 54    We also find that the State did not proffer medical conclusions without proper evidence or records. "[A] medical opinion *** connotes a conclusive and knowledgeable statement: an 'evaluation or judgment based on special knowledge and given by an expert' (American Heritage Dictionary 872 (2d Coll. ed.1985))." *Bovara v. St. Francis Hospital*, 298 Ill. App. 3d 1025, 1031 (1998). The State proffered objective descriptions of the victims' injuries that did not require the special knowledge of a medical expert. The State's proffer also included reliable information as to defendant's identity, the acts constituting the offense, and the injuries sustained by the victims.

¶ 55    We find that the State did not fail in its burden of proof because it relied on witness

statements and police reports because the Act contemplates that type of evidence is sufficient reliable information to sustain the State's burden to establish by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the charged offense. Furthermore, based on our review of the State's proffer, we cannot find that the trial court's determination that the State met its burden of proof is " 'unreasonable, arbitrary, *** not based on the evidence presented,' or that 'the opposite conclusion is clearly evident.' " *Whitaker*, 2024 IL App (1st) 232009, ¶ 71. Therefore, the trial court's judgment is not against the manifest weight of the evidence.

¶ 56    Next, defendant's motion argues that the State erred when it argued that electronic monitoring is not designed for violent offenses, and the State failed to produce evidence that defendant would not comply with court-imposed conditions of pretrial release. Initially, we find that the State satisfied its burden to prove by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and that no condition or combination of conditions can mitigate the real and present threat defendant poses to a person or the community. *Saucedo*, 2024 IL App (1st) 232020, ¶ 49, 725 ILCS 5/110-6.1 (West 2024).

> "[I]n making the initial determination of dangerousness and the determination of whether less restrictive means will mitigate that danger, the court may not only consider the actual record of conviction, but also the 'nature and circumstances of any offense *charged*,' '*[a]ny* evidence of defendant's *** history which tends to indicate a violent *** nature,' and '[a]ny other factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior.' [Citation.] The court may

26

also consider factors listed in section 110-5." (Emphases in original.) *Saucedo*, 2024 IL App (1st) 232020, ¶ 51.

"(a) In determining which conditions of pretrial release, if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release, the court shall, on the basis of available information, take into account such matters as:

(1) the nature and circumstances of the offense charged;

(2) the weight of the evidence against the defendant, except that the court may consider the admissibility of any evidence sought to be excluded;

(3) the history and characteristics of the defendant, including:

(A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, history criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a) (West 2024).

Furthermore, "when determining whether a determination that no less restrictive means will mitigate the real and present threat to a person or the community, this court has examined that decision in light of the same factors in section 110-6.1 that the trial court uses to make the initial determination that the defendant poses a real and present threat. [Citations.]" *Saucedo*, 2024 IL

App (1st) 232020, ¶ 49.

¶ 57    At the hearing on May 13, the State proffered that defendant was charged with a violent offense and "defendant has repeated crimes of violence in his background, despite the defendant serving IDOC time on them." We find that defendant's offense was not just violent, it was committed in a public place that the trial court properly noted should be a place of sanctuary for the community. Defendant's prior convictions also indicate a violent nature. Defendant was convicted of aggravated battery causing bodily harm to a victim under 13-years old where, defendant admits, the victim received a cut on the lip and bruising on the chin. Moreover, the evidence against defendant is strong in that multiple victims were able to identify defendant and provided statements, and defendant was arrested a short time after and in close proximity to the offense. 725 ILCS 5/110-5 (West 2022) (listing "the weight of the evidence against the defendant" as a point of consideration). Based on the evidence of the violent nature of the offense charged in this case and evidence of violence in defendant's past, the trial court's judgment that defendant poses a real and present threat to any person(s) or the community is not against the manifest weight of the evidence.

¶ 58    As for whether any less restrictive means will mitigate the threat, in addition to the foregoing, the State also argued that defendant had previous convictions for obstructing justice in 2023 for which he was sentenced to one year in IDOC, a burglary in 2018 for which defendant was sentenced to three years in IDOC, another burglary from 2018 for which he was sentenced to three years imprisonment, and a robbery from 2016 with a sentence of three years, and that defendant had "two bond forfeitures, [and] failures to appear in court." At the hearing on May 30 on defendant's motion for relief the State argued that defendant has spent multiple years in custody and "has not been able to comply with the conditions of that." The trial court could also

28

properly consider the possibility that defendant could return to the library. See *Saucedo*, 2024 IL App (1st) 232020, ¶ 51, *People v. Jones*, 2023 IL App (4th) 230837, ¶ 32 ("After considering the relevant factors under section 110-6.1 of the Code, the court entered written findings that pretrial detention should be denied because less restrictive conditions would not avoid that threat ([citation])."). The trial court's judgment that no less restrictive conditions would mitigate the risk to any person(s) or the community is not an abuse of discretion because the judgment is not "arbitrary, fanciful or unreasonable," and we cannot say that "no reasonable person would agree with the position adopted by the [trial] court." (Internal quotation marks omitted.) *Reed*, 2023 IL App (1st) 231834, ¶ 30.

¶ 59    We find that the evidence of the violent nature of the offenses charged and defendant's history is reliable evidence that defendant poses a real and present threat to any person(s) or the community and that defendant is unlikely to comply with conditions of pretrial release. As for defendant's argument that the State erred when it argued that electronic monitoring is not designed for violent offenses, we find that the trial court did not decline to place defendant on electronic monitoring for the reason that electronic monitoring is not "designed for violent offenses." The trial court considered the possibility of placing defendant on electronic monitoring and rejected it based on the specific articulable facts of the case. The trial court found that the injuries involved were serious, occurred in a place that "ha[s] to be [a] sanctuar[y]," and that on the issue of safety in public libraries, defendant gave "little to no consideration for two different individuals." The court chose not to impose electronic monitoring "to address the safety of the community," not because the defendant is alleged to have committed a "violent offense." Regardless of whether the State's argument was correct defendant has failed to establish that he was prejudiced. Therefore, his argument fails.

¶ 60    Next, defendant argues he was denied a fair hearing because the State failed to tender

certain documents to defendant as required by section 110-6.1(f)(1) of the Act.

> "Prior to the hearing, the State shall tender to the defendant copies of the
>
> defendant's criminal history available, any written or recorded statements, and the
>
> substance of any oral statements made by any person, if relied upon by the State
>
> in its petition, and any police reports in the prosecutor's possession at the time of
>
> the hearing." 725 ILCS 5/110-6.1(f)(1) (West 2024).

¶ 61    Specifically, defendant argues the State failed to tender (1) videotaped statements, (2)

evidence that defendant was given *Miranda* warnings prior to making any statements, or (3)

statements by witness Knive. Defendant also argues the State erred in its proffer that defendant

was convicted of aggravated battery of a child under 13 causing great bodily harm. Defendant

argues that whether he was properly "*Mirandized*" "is relevant in assessing the weight of the

evidence" against him.

¶ 62    There is no evidence that any witness or victim statements were videotaped. As stated

above, the State would only be required to tender such evidence if it exists. *Supra*, ¶ 52.

Defendant has failed to substantiate his argument that the State failed to tender a videotaped

statement that is in its possession. Therefore, this argument fails.

¶ 63    The State proffered that defendant made "post-*Miranda*" statements and what those

statements were. Admittedly, the record does not contain any other evidence that defendant was

*Mirandized*. Nevertheless, defendant argues this evidence would only be relevant to this

proceeding to determine whether defendant's arrest resulted from an improper interrogation. The

record contains clear and convincing evidence that defendant was not arrested through an

improper interrogation. Nor was defendant's statement necessary to the trial court's

determination to deny defendant pretrial release. Defendant's statement did not form the basis of any part of the trial court's judgment. The court denied defendant pretrial release based on the seriousness of the allegations and injuries, location of the offense, and defendant's lack of regard for the victims. Because there is no evidence that defendant's charges or his pretrial detention resulted from an improper investigation this argument also fails.

¶ 64     The State proffered that a witness, Knive, directed the police to a backpack containing property belonging to defendant. Defendant does not argue he was prejudiced by the absence of a written statement by Knive. Similarly, the State explained its brief misstatement as to one of defendant's prior convictions at the hearing on the motion for relief. We find the trial court properly found that the brief misstatement did not prejudice defendant. Accordingly, these arguments fail. See *People v. Davis*, 2023 IL App (1st) 231856, ¶ 41 (finding no error where "the State's alleged failure to furnish defendant with a copy of his criminal record before the hearing resulted in no prejudice"), *People v. Green*, 2024 IL App (1st) 240211, ¶ 28 (finding no prejudice to the defendant from scrivener's error in petition for revocation of pretrial release).

¶ 65     Finally, defendant argues the trial court erred in its admonishment to defendant regarding the right to appeal. The trial court acknowledged its mistake and corrected it at the hearing on defendant's motion for relief. Our supreme court construed Illinois Supreme Court Rule 605(a) and held that "a trial court's failure to give proper admonishments does not necessarily require reversal in every instance." *People v. Henderson*, 217 Ill. 2d 449, 466 (2005). Instead, "where a defendant is given incomplete Rule 605(a) admonishments regarding the preservation of sentencing issues for appeal, remand is required only where there has been prejudice or a denial of real justice as a result of the inadequate admonishment." *Id*. The admonishments at issue here also concern preservation of issues for appeal. We find the principle announced in *Henderson*

31

applies in this case. Here, defendant timely filed a motion for relief from the judgment denying pretrial release and an appeal from the ruling on the motion. Defendant has not argued, nor can we discern, any prejudice to defendant or "denial of real justice" from the trial court's error. Therefore, we find that remand is not required. *Id*.

¶ 66    We find that the trial court's factual findings are not against the manifest weight of the evidence and the judgment denying defendant's motion for relief and denying pretrial release is not an abuse of discretion.

¶ 67                                      CONCLUSION

¶ 68    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 69    Affirmed.